**CITY OF LUBBOCK, Relator,**

v.

**Honorable Mackey HANCOCK, Respondent.**

No. 07–96–0296–CV.

Court of Appeals of Texas, Amarillo.

Nov. 4, 1996.

Crenshaw, Dupree & Milam, Jessica Brown Hudgins, Philip Johnson, Lubbock, for City of Lubbock, Relator.

Ford, Yungblut White & Salazar, Jeffrey A. Ford, Wesly C. Maness, Dallas, for real party in interest Tech Builders, Inc.

Before BOYD, C.J., DODSON J., and REYNOLDS, Senior Justice.*

BOYD, Chief Justice.

In this original proceeding, relator, the City of Lubbock (the City), seeks a writ of mandamus directing respondent, the Honorable Mackey Hancock, to revoke his order staying litigation between the City and Tech Builders Incorporated (TBI), and compelling arbitration. For the reasons stated herein, we decline to issue the writ.

On April 14, 1994, the City and TBI executed a written contract whereby TBI would perform work on a sewer underneath a street intersection in Lubbock. The work required the removal of the asphalt roadway and granular base at the intersection. The contract contained two paragraphs concerning arbitration and provided that "[a]ll questions of dispute under this agreement shall be submitted to arbitration at the request of either party to the dispute."

Upon commencement of the work, TBI discovered that the base material supporting the roadway was also asphalt and had a thickness in excess of 42 inches. TBI sought additional compensation for removal of the asphalt base. By letter dated January 30, 1995, the City's agent, City Engineer Larry D. Hertel, rejected TBI's request for $47,-941.84 in additional compensation. Hertel suggested additional compensation be proportional to the relationship between the thickness of asphalt TBI was required to remove and the "thickness shown in the typical section of the plans." In a March 31, 1995 letter, Hertel withdrew his proposal and stated "[n]o additional compensation will be considered for the additional asphalt thickness."

In an April 25 letter, TBI inquired whether Hertel's March 31 letter was a final decision and made a "formal" objection to the decision. TBI stated that if the decision was not reversed, it intended to appeal the decision to arbitration. Hertel's response, dated May 5, 1995, was that TBI's "interpretation of my March 31, 1995 letter is correct," and that "as allowed by the contract [TBI has] the ability (sic) to pursue arbitration on this issue of dispute."

On May 17, 1995, TBI's attorney advised the City that although the City had not described any of its decisions as a "final decision" under the contract, TBI "will assume that your decision is final," then made a demand for arbitration. On May 24, 1995, TBI advised the City of its choice of arbitrator. The City named its arbitrator two days later. The two party arbitrators selected Charles Joplin as the neutral arbitrator. The parties participated in preparation for the arbitration hearing scheduled for October 24, 1995.

On the day of the hearing, the City filed suit in district court seeking declaratory judgment that TBI was not entitled to arbitrate, a temporary restraining order, and

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

injunctive relief. Although it does not appear in the record before us, the parties agree that respondent granted the City's request for a temporary restraining order. TBI answered, challenging the City's right to an ex parte restraining order under Rule 680 of the Rules of Civil Procedure, seeking declaratory judgment that TBI was entitled to arbitration of the dispute concerning additional compensation, and seeking an order compelling binding arbitration.

On January 2, 1996, the City filed an amended petition, again seeking declaratory judgment but dropping its request for injunctive relief. It then moved for summary judgment on February 9. TBI filed its Motion to Stay Litigation and Compel Arbitration on April 18, 1996. Respondent held a hearing on these motions on July 12, 1996 and, by order dated July 29, 1996, denied the City's motion and granted TBI's motion. It is the granting of TBI's Motion to Stay Litigation and Compel Arbitration that the City now challenges by seeking a writ of mandamus.

 The standards to be applied in a mandamus proceeding have been clearly set out by the Texas Supreme Court in the decision of *Walker v. Packer*, 827 S.W.2d 833 (Tex.1992). Mandamus is an extraordinary remedy, available only in limited circumstances. *Id.* at 840; *State v. Sims*, 871 S.W.2d 259, 261 (Tex.App.—Amarillo 1994, orig. proceeding). To be entitled to the remedy of mandamus, a relator must meet both requirements of a two-prong test set forth in *Walker*. The relator must show that (1) the trial court clearly abused its discretion, and (2) it has no adequate remedy by appeal. *Walker*, 827 S.W.2d at 839–40. This court has no power to issue a writ of mandamus in the absence of these conditions. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985, orig. proceeding).

 The clear abuse of discretion prong is approached differently with respect to factual matters from those concerning the determination and application of the appropriate law. With respect to resolution of factual issues, the reviewing court may not substitute its judgment for that of the trial court, *Walker*, 827 S.W.2d at 839, and the relator must establish that the trial court could reasonably have reached only one decision. *Id.* However, with regard to questions of law, the standard of review is much less deferential. This is because a trial court has no "discretion" in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840.

 The right to arbitrate disputes arises exclusively through agreement between the parties. *Pepe Intern. Development Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 931 (Tex.App.—Houston [1st Dist.] 1996, no writ). Such agreements are favored by both Texas and federal law. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *Prudential Securities Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995); Federal Arbitration Act, 9 U.S.C. § 2 (1988); Tex.Civ.Prac. & Rem.Code § 171.001 (Vernon Supp.1996). Here the agreement provided that "all [arbitration] proceedings shall be governed by Arbitration Statutes of Texas, being Article 224, *et seq.*, Vernon's Annotated Civil Statutes." Although Articles 224–238 were repealed by the legislature in 1995, the provisions of those articles were reenacted as Chapter 171 of the Civil Practice and Remedies Code. Act of June 14, 1995, 74th Leg., ch. 588, § 1, 1995 Tex.Gen. Laws 3402. Parenthetically, the parties do not challenge the applicability of Chapter 171 of the Civil Practice and Remedies Code.

Chapter 171 has its origins in the State's adoption of the Uniform Arbitration Act. One of the purposes of that act was to promote uniformity of the law among states adopting it. Indeed, the statute itself directs that it is to be construed with an eye toward promoting uniformity. Tex.Civ.Prac. & Rem. Code Ann. § 171.019 (Vernon Supp.1996).

 Again parenthetically, neither party discusses the applicability of the Federal Arbitration Act (FAA). That act creates a federal body of law of arbitrability applicable to contracts involving maritime transactions or interstate commerce, *Volt Information Sciences Inc. v. Bd. of Trustees Leland Stanford Junior Univ.*, 489 U.S. 468, 475, 109 S.Ct. 1248, 1253–54, 103 L.Ed.2d 488 (1989), the purpose of which is to overcome courts' traditional refusal to enforce arbitration

agreements. *Allied–Bruce Terminix Companies, Inc., v. Dobson,* 513 U.S. 265, ——, 115 S.Ct. 834, 838, 130 L.Ed.2d 753, 762 (1995). It does not, however, completely preempt state law concerning arbitration, nor does it alter the substantive law to be applied by the arbitrator in resolving the underlying dispute, such as contract interpretation. *Volt,* 489 U.S. at 477, 109 S.Ct. at 1255.

The United States Supreme Court has interpreted the FAA's reach to extend to the limits of Congress's Commerce Clause powers. *Allied–Bruce Terminix,* 513 U.S. at ——, 115 S.Ct. at 841, 130 L.Ed.2d at 766. In *Allied–Bruce Terminix,* the Court opined that the use of materials transported in interstate commerce to fulfill a contract for residential termite control was sufficient to support a holding that the contract evidenced a transaction involving interstate commerce. *Id.* Because there is no evidence in the record addressing the relationship between the contract at issue and interstate commerce, we do not express any opinion on that question.

The City describes the issue before us as whether the trial court abused its discretion by staying litigation and ordering arbitration when TBI failed to make a timely demand for arbitration, an event the City describes as a condition precedent to TBI's right to arbitration. We do not agree with that description. The City's position assumes, first, that the court below is the proper forum to determine whether TBI has satisfied the conditions precedent to its contractual right of arbitration and second, that the City has established that TBI failed to satisfy those conditions.

The seminal case discussing allocation of the responsibility for determining arbitrability is *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). A central issue in that case was "whether the courts or the arbitrator is the appropriate body to decide whether procedural prerequisites which, under the bargaining agreement, condition the duty to arbitrate have been met." 376 U.S. at 544, 84 S.Ct. at 911. In addressing this issue, the Court made a distinction between substantive arbitrability, *i.e.,* whether the issue in

dispute is encompassed by an agreement to arbitrate, and procedural arbitrability, which included issues such as the satisfaction of conditions precedent to an obligation to arbitrate. Noting the close relationship between the merits of a dispute and procedural arbitrability, the Court held that questions of procedural arbitrability should be left to the arbitrator. 376 U.S. at 557, 84 S.Ct. at 918.

The distinction between substantive and procedural arbitrability and the determination of who should resolve those questions that was made in *John Wiley & Sons* continues to be followed in the vast majority of courts addressing the issue. This is true of courts applying both the Federal Arbitration Act and the Uniform Arbitration Act. *See Smith Barney Shearson, Inc. v. Boone,* 47 F.3d 750, 754 (5th Cir.1995) (FAA); *Del E. Webb Construction v. Richardson Hospital Auth.,* 823 F.2d 145, 149 (5th Cir.1987) (FAA); *Coonly v. Rotan Mosle, Inc.,* 630 F.Supp. 404, 406 (W.D.Tex.1985) (FAA); *City of Cottonwood v. James L. Fann Contracting, Inc.,* 179 Ariz. 185, 877 P.2d 284, 292 (1994); *Thomas v. Farmers Ins. Exchange,* 857 P.2d 532, 534 (Colo.Ct.App.1993); *Executive Life Ins. Co. v. John Hammer & Assoc, Inc.,* 569 So.2d 855, 857 (Fla.Dist.Ct. App.1990); *Amalgamated Transit Union, Local 900 v. Suburban Bus Div.,* 262 Ill. App.3d 334, 199 Ill.Dec. 630, 635, 634 N.E.2d 469, 474 (1994); *Village of Carpentersville v. Mayfair Const. Co.,* 100 Ill.App.3d 128, 55 Ill.Dec. 412, 426 N.E.2d 558 (1981); *Des Moines Asphalt & Paving Co. v. Colcon Industries Corp.,* 500 N.W.2d 70, 72 (Iowa 1993); *City of Lenexa v. C.L. Fairley Const. Co. Inc.,* 15 Kan.App.2d 207, 805 P.2d 507, 510 (1991); *The Beyt, Rish, Robbins Group v. Appalachian Regional Healthcare, Inc.,* 854 S.W.2d 784, 786 (Ky.Ct.App.1993); *City of Dearborn v. Freeman–Darling, Inc.,* 119 Mich.App. 439, 326 N.W.2d 831 (1982); *City of Morris v. Duininck Bros. Inc.,* 531 N.W.2d 208, 210 (Minn.Ct.App.1995); *Gaines v. Financial Planning Consultants, Inc.,* 857 S.W.2d 430, 433 (Mo.Ct.App.1993); *Exber v. Sletten,* 92 Nev. 721, 558 P.2d 517 (1976); *State v. Stremick Const. Co.,* 370 N.W.2d 730, 735 (N.D.1985); *Messa v. State Farm Ins. Co.,* 433 Pa.Super. 594, 641 A.2d 1167, 1170

(1994); *Shaler Area Ed. Ass'n v. Shaler Area School Dist.*, 61 Pa.Cmwlth. 211, 433 A.2d 168, 170 (1981); *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 519 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Kline v. O'Quinn*, 874 S.W.2d 776, 783 (Tex. App.—Houston [14th Dist.] 1994, writ denied), *cert. denied,* —— U.S. ——, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995); *see also* Annotation, *Waiver of, or Estoppel to Assert, Substantive Right or Right to Arbitrate as Question for Court or Arbitrator*, 26 A.L.R.3d 604, 617 (1969).

*City of Cottonwood* is of particular interest because it correctly notes that most jurisdictions reserving questions of procedural arbitrability for the courts have not adopted the Uniform Arbitration Act. 877 P.2d at 291.

In support of its position that the trial court was the proper forum to determine if TBI has satisfied the contractual conditions precedent to arbitration, the City primarily relies upon section 171.002(a) of the Civil Practice and Remedies Code. That section provides:

> On application of a party showing an agreement described in Section 171.001, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration; but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

Tex.Civ.Prac. & Rem.Code Ann. § 171.002(a) (Vernon Pamph.1997). We believe section 171.002(a) is consistent with the distinction between substantive and procedural arbitrability noted in the cases set out above. Without addressing those cases, the City contends that there was no agreement to arbitrate until TBI satisfied the conditions precedent set out in the contract. We do not agree.

■■■ When the City executed the contract on April 14, 1994, it created an agreement to arbitrate. When considering TBI's motion to compel arbitration, the court's only task under section 171.002(a) was to determine the existence of an agreement to arbitrate and whether the dispute was within the scope of that agreement. *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874, 878 (Tex.App.—Waco 1992, writ denied). That section addresses only the existence and scope of the agreement to arbitrate, *i.e.*, questions of substantive arbitrability. It does not require or authorize a court to address questions of procedural arbitrability such as the satisfaction of conditions precedent to a right of arbitration. Indeed, in applying a provision very similar to section 171.002(a), the Minnesota Court of Appeals reached the same conclusion in *City of Morris*, 531 N.W.2d at 210.

We do not view our holding as being in conflict with *Freis v. Canales*, 877 S.W.2d 283 (Tex.1994). There, the parties had agreed to resolve disputes by conciliation or arbitration. Because the parties participated in mediation, which the court described as the functional equivalent of conciliation, the court found that there was no additional right to arbitration. *Id.*

In support of its position, the City also cites *City of Alamo v. Garcia*, 878 S.W.2d 664, 666 (Tex.App.—Corpus Christi 1994, no writ), and *Belmont v. Lyondell Petrochemical*, 896 S.W.2d 352, 357 (Tex.App.—Houston [1st Dist.] 1995, no writ), which hold that a court's duty in determining arbitrability extends to considering whether conditions precedent to a right of arbitration have been satisfied. These cases do not cite any authority discussing arbitration in support of their holdings and do not discuss or attempt to distinguish any of the body of law cited above that holds that such questions are the province of the arbitrator.

Moreover, even if we were to give weight to the decisions in *City of Alamo* and *Belmont*, in light of the overwhelming weight of authority cited above, the City could not prevail on its petition for writ of mandamus. As we have held before, if the law is not settled, mandamus is unavailable. *State v. Sims*, 871 S.W.2d at 263.

Relator has failed to meet the first prong of the test for the issuance of a writ of mandamus by establishing a clear abuse of discretion on the part of the trial judge. That being true, our task is complete and

relator's petition for writ of mandamus must be, and is, hereby denied.