**L & L KEMPWOOD ASSOCIATES, L.P., Appellant,**

v.

**OMEGA BUILDERS, INC., Appellee.**

**and**

**In re L & L KEMPWOOD ASSOCIATES, L.P.**

Nos. 13–97–772–CV, 13–97–901–CV.

Court of Appeals of Texas, Corpus Christi.

May 21, 1998.

Rehearing Overruled July 30, 1998.

---

C. Henry Kollenberg, Kirby W. Cronin, Crain, Caton & James, Houston, for appellant.

Roberto Rene Garcia, Garcia & Rodriguez, McAllen, Keith C. Livesay, Stapleton, Livesay & Cowen, Pharr, Frank Sabo, McAllen, for appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION AND MANDAMUS

CHAVEZ, Justice.

Appellant Omega Builders, Inc. (Omega) is a construction contractor that performed work on a project owned by appellee L & L Kempwood Associates, L. P., et al. (L & L Kempwood). The parties had signed contracts that provided for arbitration of "any controversy or claim arising out of or related to the contract, or the breach thereof." The contracts also provided that "notice of demand for arbitration shall be filed in writing with the other party to the agreement between the owner and contractor and with the American Arbitration Association...." A dispute arose concerning Omega's work and Omega filed a lawsuit in district court. L & L Kempwood filed notice of a demand for

arbitration with the American Arbitration Association, but did not provide notice to Omega. Omega responded with a motion to stay arbitration, including in the motion an argument that L & L Kempwood had not satisfied the notice provision and therefore had not established their right to arbitration under the contracts. The trial court granted the motion, and L & L Kempwood appealed by way of an interlocutory appeal and a petition for writ of mandamus. Because we determine that L & L Kempwood failed to establish that they had satisfied the notice provision in the contracts and that the notice provision was a condition precedent to the arbitration agreement, we affirm the order of the trial court.

## Interlocutory Appeal or Mandamus

■ This matter is before us both as a petition for writ of mandamus and an interlocutory appeal because the Texas Arbitration Act [1] (TAA) provides for appellate review by interlocutory appeal, while only mandamus relief is available under the Federal Arbitration Act [2] (FAA). *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87 (Tex.1996). The Federal Arbitration Act is applicable to any arbitration agreement "evidencing a transaction involving commerce." 9 U.S.C.A. § 2 (1987). The phrase "involving commerce" means commerce among the several states or with foreign nations. 9 U.S.C.A. § 1 (1987). Therefore we must determine whether the contract in this case evidenced a transaction involving interstate commerce.

In 1995 the United States Supreme Court issued two opinions which bear on this issue. The first, issued in January, 1995, was *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In *Allied–Bruce* the Court held that the words "involving commerce" should be

broadly construed to include any contract "affecting" interstate commerce. *Id.* at 839–40. However, four months later, in *U.S. v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Court held that, when a law does not concern regulating the channels of interstate commerce, the instrumentalities of interstate commerce, or persons or things in interstate commerce, then Congress has authority to regulate under the Commerce Clause only those activities that "substantially affect" interstate commerce. [3] *Id.* at 1629–30. The question arises, then, whether the broad "affecting commerce" test stated in *Allied–Bruce* survives *Lopez*'s articulation of a "substantially affect" test.

The few cases our research has uncovered which address this issue have held that *Lopez* is not applicable to the Federal Arbitration Act, and that the "affecting commerce" test stated in *Allied–Bruce* remains the standard. *See Arbitration Between: Trans Chem. Ltd. and China Nat'l Import and Export Corp.*, 978 F.Supp. 266, 300–01 (S.D.Tex.1997) (applying *Allied–Bruce* rather than *Lopez* to issue of whether contract involved interstate commerce); *see also Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 719–720 (Tex.App.—Fort Worth 1997, no writ) (same). However, we find the reasoning of these cases unpersuasive; rather it seems to us unmistakable that the rule stated in *Lopez* does supplant *Allied–Bruce*, and we are bound to apply *Lopez* and its "substantially affect" test.

Although the court in *Trans Chem* acknowledged that one of the parties had urged the application of *Lopez*, the court did not explain why it chose to apply *Allied–Bruce* rather than *Lopez*. *Trans Chem*, 978 F.Supp. at 300–01. The court in *Palm Harbor* explained that it did not consider *Lopez* on point

---

1. *See* Tex. Civ. Prac. & Rem.Code. Ann. § 171.001 *et. seq.* (Vernon 1997 supp.1998).

2. *See* 9 U.S.C. § 1 *et seq.*

3. The *Lopez* decision indicates that, when a law *does* concern regulating the channels of interstate commerce, the instrumentalities of interstate commerce, or persons or things in interstate commerce, then the "substantial affect" test does not apply. *Lopez*, 115 S.Ct. at 1629. Because the contract in this case obviously does not

concern the channels of interstate commerce, the instrumentalities of interstate commerce, or persons or things in interstate commerce, applying *Lopez* to the facts of this case would mean applying the "substantial affect" test. Hereafter we refer to only the "substantial affect" test as the standard set forth by *Lopez* because it would be cumbersome to repeat the exceptions to the "substantial affect" standard each time we refer to it.

because *Lopez*dealt with a "criminal statute that by its terms had nothing to do with commerce" and because "the extent of Congress's power to legislate" was not an issue in *Palm Harbor,* whereas it was an issue in *Lopez. Palm Harbor,* 944 S.W.2d at 719–20. We do not agree with the *Palm Harbor*court's view of *Lopez* and its relation to the issues presented by the FAA.

In *Lopez,* the United States Supreme Court noted that the statute at issue did not contain a jurisdictional element that would limit its application to situations with the requisite nexus to interstate commerce. *Lopez,* 115 S.Ct. at 1631. Many other federal statutes, the Court noted, do contain a provision explicitly providing that the statute only applies when interstate commerce is implicated, and the connection to interstate commerce is an element that must be established on a case-by-case basis. *Id.* The FAA is one such statute, where the statute only applies to a particular case upon a sufficient showing that the contract at issue involves interstate commerce. Therefore, whether "the extent of Congress's power to legislate" has been exceeded, which the *Palm Harbor*court thought was not at issue, is actually an element that must be established in every case before the FAA applies. *Allied–Bruce*held that, in establishing the FAA, Congress intended to extend the jurisdiction of the law to the maximum extent permitted under the Commerce Clause. *Allied–Bruce,* 115 S.Ct. at 840. This aspect of *Allied–Bruce* remains intact after *Lopez.* The significant modification of the *Allied–Bruce*analysis that results from *Lopez* is that, after *Lopez,* the Commerce Clause permits Congress's jurisdictional to reach only as far as matters that "substantially affect" interstate commerce.

■ Therefore, we examine the contract in this case to see if a substantial effect on interstate commerce is present. The parties to the contract were Omega Builders, a Texas contractor, and L & L Kempwood Associates, L.P., a Georgia partnership. The contract concerned work that was to be done at an apartment complex in Houston, Texas. The project administrator was The HDH partnership, Inc., a Georgia based corporation. All of Omega's work was to be performed in Texas on fixed real property in Texas. Although L & L Kempwood and HDH are entities based in other states, there is no indication in the record that their involvement in this contract changed the localized nature of this contract or affected interstate commerce in any substantial way. We do not believe that interstate commerce is substantially affected when a party from another state hires a party in Texas to do repairs on fixed real property in Texas. The labor, the compensation for that labor, and the effects of the labor all remain in Texas. The only connection to interstate commerce is that the owner hiring the contractor is based in another state and therefore their financing of the project may have some incidental effect on commerce in the owner's home state. We do not consider such a minor and indirect effect on interstate commerce to be "substantial." Because this contract did not concern activities that substantially affect interstate commerce, the Federal Arbitration Act does not apply to this contract, and we will apply the Texas Arbitration Act. Therefore, we conclude that interlocutory appeal, rather than a petition for writ of mandamus, is the proper posture of this case before us.

### The Hearing on the Motion to Stay Arbitration

Before the trial court granted Omega's motion to stay arbitration, the court conducted a hearing on the motion. Despite the proddings of L & L Kempwood's counsel and the clerk of this court, the court reporter for that hearing has not produced a reporter's record of that hearing. Ultimately L & L Kempwood filed an affidavit from its attorney who swore that no evidence was presented at the hearing, and the hearing consisted solely of arguments by counsel. L & L Kempwood then filed an unopposed motion to proceed with the appeal without the reporter's record, which this court granted. At oral argument, we instructed the parties that if they presented any evidence at the hearing or felt that any evidentiary issues had been raised at the hearing they should bring those matters to the attention of this court. Counsel for L & L Kempwood has reiterated its position that no evidence was submitted at

the hearing. Omega has failed to bring any evidentiary issues to our attention.

■ In its appellate brief, Omega argues that, by failing to secure the reporter's record from the hearing, L & L Kempwood has failed to present an adequate record to support the appeal, and cites cases for the proposition that, where the appellant has failed to provide a complete record, it must be presumed that the absent portions of the record support the action of the trial court. *See, e.g., Englander v. Kennedy*, 428 S.W.2d 806, 806 (Tex.1968); *Fiesta Mart, Inc. v. Hall*, 886 S.W.2d 440, 442–43 (Tex.App.—Houston [1st Dist.] 1994, no writ). However, under the present rules of appellate procedure, which were not in force at the time any of the cases cited by Omega were decided, responsibility for compiling the appellate record now lies with the courts, not with the appellant. TEX.R.APP. P. 35.3(c). Under rule 34.6(c)(4), the appellate court must presume that a partial reporter's record designated by the parties constitutes the entire record. TEX.R.APP. P. 34.6(c)(4). We interpret the unopposed motion to proceed without the reporter's record as an agreed designation of the record, and therefore we will consider this appeal as if the record before us constituted the entire record. We presume no evidence was submitted by either party at the hearing on the motion to stay arbitration.

### The Notice Requirement as a Condition Precedent

L & L Kempwood argues that the issue of whether it provided proper notice was an issue for the arbitrator, not for the trial court. The TAA provides that "A court may stay an arbitration ... on application and a showing that there is no agreement to arbitrate." TEX. CIV. PRAC. & REM.CODE ANN. § 171.023(a) (Vernon Supp.1998). L & L Kempwood argues that a distinction exists between the substantive question of whether an agreement to arbitrate exists, and procedural questions such as whether proper notice has been provided. *See City of Lubbock v. Hancock*, 940 S.W.2d 123, 126–27 (Tex. App.—Amarillo 1996, orig. proceeding) (courts applying FAA and Uniform Arbitration Act look only for the existence of a valid agreement to arbitrate, and leave procedural issues such as the satisfaction of conditions precedent to arbitrators). They also argue that it was Omega's burden to prove that no agreement to arbitrate existed, citing *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) and section 171.023 of the Texas Civil Practice and Remedies Code.

This court has previously ruled on almost the precise issue presently before us. In *City of Alamo v. Garcia*, 878 S.W.2d 664 (Tex.App.—Corpus Christi 1994, no writ), we reviewed the denial of a motion to compel arbitration. Garcia argued that the City of Alamo was not entitled to arbitration because, although the contract called for arbitration of all claims under the contract, it also called for notice to the other party of the invocation of the arbitration provision, and the city had failed to provide Garcia with notice. We held that the notice provisions were conditions precedent that had to be met before a party was entitled to refer a dispute to arbitration. *Id.* at 666. Until the conditions precedent to the arbitration agreement had been met, there was no "agreement to arbitrate" under the TAA. *Id.*

L & L Kempwood correctly notes that section 171.023 requires the party seeking to stay arbitration to make a showing that no valid arbitration agreement exists. However, L & L Kempwood has never provided any indication that it provided notice to Omega that it was referring the dispute to arbitration. It is undisputed that neither side presented any evidence at the hearing on the motion to stay arbitration. Under these circumstances, and in light of the inherent difficulty in proving a negative, we hold that Omega satisfied its burden of showing that L & L Kempwood failed to provide the notice required under the contract.

L & L Kempwood cites several cases that construed the Federal Arbitration Act. In one of those cases, *City of Lubbock v. Hancock*, the Amarillo court of appeals discussed the relationship between the FAA, the TAA, and the Uniform Arbitration Act, on which the TAA is based. *City of Lubbock*, 940 S.W.2d at 126–27; *see also Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 273 (Tex. 1992) (TAA is based on Uniform Arbitration

Act). *City of Lubbock* cited a long list of cases from many different jurisdictions that applied both the FAA and the Uniform Act, all of which supported the approach adopted by the court in *City of Lubbock*, that is, to determine only if an arbitration agreement exists in the contract, and leave issues pertaining to conditions precedent to the arbitrator. *City of Lubbock*, 940 S.W.2d at 126–27. However, we have determined that this case should be governed by the TAA, and therefore do not consider any of the FAA cases cited by L & L Kempwood to be controlling.

In *City of Alamo v. Garcia* we confronted the issue of whether courts or arbitrators should determine issues pertaining to conditions precedent to an arbitration agreement governed by the TAA, and determined that such issues could properly be addressed by courts. This view has also been adopted by the San Antonio Court of Appeals in *Weekley Homes, Inc. v. Jennings*, 936 S.W.2d 16 (Tex. App.—San Antonio 1996, writ denied) and the First District Court of Appeals in Houston, in *Belmont v. Lyondell Petrochemical*, 896 S.W.2d 352, 358 (Tex.App.—Houston [1st Dist.] 1995, no writ). To the extent *City of Lubbock* and the cases cited therein are contrary to *City of Alamo, Weekley Homes,* and *Belmont*, we adhere to our own precedent and follow the analysis set out in *City of Alamo*.

L & L Kempwood also cites *Kline v. O'Quinn*, 874 S.W.2d 776, 783 (Tex.App.—Houston [14th Dist.] 1994, writ denied) and *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 519 (Tex.App.—Houston [1st Dist.] 1994, writ denied) for the same analysis as the Amarillo court used in *City of Lubbock*. The *Kline* case does not expressly indicate whether it is applying the TAA or the FAA, although the opinion's heavy reliance on federal authorities suggests that it is applying the FAA. In any event, it was undisputed in *Kline* that the arbitration agreement had been properly invoked and that the dispute had been properly referred to an arbitrator. The issue before the court was whether a party's pleadings before the arbitrator supported the arbitrator's award of punitive damages. *Kline*, 874 S.W.2d at 782.

The court held that this procedural issue was properly left to the arbitrator. *Id.* at 783. In the case before us Omega, unlike the party contesting the arbitrator's decision in *Kline*, contends that the arbitration agreement was not properly invoked, and therefore the matter is not properly referable to arbitration. In *Kline*, the case went to arbitration without objection from either party. Therefore, *Kline* is not controlling over the case before us.

In *City of Baytown*, the court referred to the TAA but, as in *Kline*, the case proceeded to arbitration without objection from either party. After the arbitrators entered their award, Baytown argued that the arbitrators were without jurisdiction of the entire dispute, because the right to arbitration under the contract had not been timely invoked. *City of Baytown*, 886 S.W.2d at 519. The court held that the arbitrators had the power to determine the timeliness of the demand for arbitration and allowed the arbitrators' determination of the issue to stand. *Id. City of Baytown* does not stand for the proposition that a court is without power to consider whether a condition precedent to an arbitration agreement has been satisfied at a hearing before arbitration has begun. The *Belmont* decision by the First District Court of Appeals in 1995 also indicates that the 1994 opinion in *City of Baytown* should not be read as contrary to our opinion in *City of Alamo*. *See Belmont*, 896 S.W.2d at 356–58 (applying similar analysis to that used in *City of Alamo* ). Therefore, *City of Baytown* is also not controlling.

∎ L & L Kempwood also urges us to consider the presumption in Texas jurisprudence favoring arbitration. *See, e.g., EZ Pawn*, 934 S.W.2d at 91; *D. Wilson Const. Co., Inc. v. McAllen Indep. Sch. Dist.*, 848 S.W.2d 226, 230 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.). Once the existence of an arbitration agreement has been established, then a presumption attaches favoring arbitration and the burden of proof shifts to a party seeking to avoid the arbitration agreement based on fraud, waiver, or an argument that the dispute is not within the scope of the agreement. *See EZ Pawn*, 934 S.W.2d at 89 (burden on party opposing arbi-

tration to show waiver); *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995) (burden on parties opposing arbitration to show claims outside scope of arbitration agreement); *Prudential Sec. Inc. v. Banales,* 860 S.W.2d 594, 597 (Tex.App.—Corpus Christi 1993, no writ) (burden on party opposing arbitration to present evidence of fraud). However, the initial burden of presenting evidence of an arbitration agreement that governs the dispute at issue is on the party seeking arbitration. *City of Alamo v. Garcia,* 878 S.W.2d at 665; *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 920 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.); *Weekley Homes,* 936 S.W.2d at 18. In this case, L & L Kempwood had the burden of establishing that a valid arbitration agreement governed the dispute, a burden which required a showing that all conditions precedent to the arbitration agreement had been satisfied. *City of Alamo,* 878 S.W.2d at 665; *Weekley Homes,* 936 S.W.2d at 18; *Belmont,* 896 S.W.2d at 358.

■ We must also consider L & L Kempwood's argument that the trial court was without authority to stay arbitration on the basis of L & L Kempwood's failure to provide proper notice because the statute only allows arbitration to be stayed on a showing that "there is no agreement to arbitrate." This argument is premised on L & L Kempwood's view that the notice issue is a "procedural" issue that must be left to the arbitrator to determine, and that courts are powerless to examine issues concerning the satisfaction of conditions precedent in determining whether an agreement to arbitrate exists. However, we have determined that, until the party seeking to rely on an arbitration agreement establishes that any conditions precedent to the agreement have been met, then there is no agreement to arbitrate. Under this holding, the trial court acted within its authority in considering whether L & L Kempwood provided proper notice.

■ Two other reasons support our position that parties seeking arbitration should be required to show satisfaction of conditions precedent to the court before the court refers the matter to an arbitrator. The first

relates to the meaning of the phrase "condition precedent." A condition precedent is either a condition to the formation of an agreement or acts or events that must occur before there is a right to performance under the contract. *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex. 1976); *Sheldon L. Pollack Corp. v. Falcon Indus., Inc.* 794 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1990, writ denied). The approach espoused by *City of Lubbock* requires that issues concerning conditions precedent be referred to an arbitrator pursuant to an arbitration agreement, even though the very existence of issues concerning conditions precedent means that the arbitration agreement may not be binding on the parties. In essence, parties are required to go before an arbitrator before their obligation to submit to an arbitrator has been established. If a condition precedent has not been satisfied, then the agreement of the parties to submit to arbitration has not been triggered.

The second reason concerns efficiency. Efficiency and lower costs are frequently cited as the main benefits of arbitration. *Jack B. Anglin,* 842 S.W.2d at 268. Yet, in cases where conditions precedent have not been met, it is needlessly inefficient for a court which has the case before it to refuse to examine issues pertaining to conditions precedent and refer them to an arbitrator, only to have the arbitrator then examine the case and return it to the court because a condition precedent to arbitration has not been met.

### Conclusion

■ We hold that L & L Kempwood had the burden before the district court of showing that it had satisfied the notice provision, which was a condition precedent to the agreement to arbitrate. Because L & L Kempwood presented no evidence that it had satisfied the condition precedent, the district court acted properly in staying the arbitration. L & L Kempwood's petition for writ of mandamus is DENIED. On interlocutory appeal, the order of the trial court is AFFIRMED.