## D. WILSON CONSTRUCTION COMPANY, Appellant,

v.

## CRIS EQUIPMENT COMPANY, INC., Appellee.

### In re D. Wilson Construction Company, Relator.

Nos. 13–98–373–CV, 13–98–439–CV.

Court of Appeals of Texas, Corpus Christi.

March 11, 1999.

Rehearing Overruled April 8, 1999.

Roger W. Hughes, Charlie J. Cilfone, Adams & Graham, Harlingen, for appellant.

Michael P. Morris, Tekell, Book, Matthews & Limmer, Houston, for appellee.

Roger W. Hughes, Adams & Graham, Harlingen, for relator.

Michael P. Morris, Tekell, Book, Matthews & Limmer, Houston, Walter J. Passmore, Ewers & Toothaker, McAllen, for real parties.

Before Justices HINOJOSA, YAÑEZ, and RODRIGUEZ.

## OPINION ON MOTION
## FOR REHEARING

Opinion by Justice HINOJOSA.

We issued our original opinion in these cases on December 30, 1998. Appellant/rela-

tor, D. Wilson Construction Company ("Wilson"), subsequently filed motions for rehearing. We deny Wilson's motion for rehearing in Cause No. 13–98–439–CV. We grant Wilson's motion for rehearing in Cause No. 13–98–373–CV, withdraw our opinion of December 30, 1998, and substitute the following as the opinion of the Court.

Wilson filed both of these cases after the trial court denied its motion to compel appellee/real party-in-interest, Cris Equipment Company, Inc. ("Cris"), to submit all claims to arbitration. In the interlocutory appeal (No. 13–98–373–CV) Wilson asserts arbitration is mandatory under the Texas General Arbitration Act (TGAA).[1] In the petition for writ of mandamus (No. 13–98–439–CV) Wilson contends arbitration is also mandatory under the Federal Arbitration Act (FAA).[2]

We deny Wilson's petition for writ of mandamus. In the interlocutory appeal, we reverse the trial court's order and remand the case to the trial court with orders to abate the underlying suit and to compel Cris Equipment Company, Inc. to submit all claims against D. Wilson Construction Co. to arbitration.

A. BACKGROUND AND PROCEDURAL HISTORY

Wilson, a general contractor, performed work on a project for the McAllen Independent School District ("School District") in McAllen, Texas. The work was substantially completed in October 1990. Shortly thereafter, the School District found deficiencies and attempted to resolve them with Wilson. When the parties were unable to reach a resolution, the School District filed suit against Wilson and others. Wilson then moved to compel arbitration which the trial court denied. In an interlocutory appeal from the denial, this Court found the trial court erred and ordered the trial court to compel arbitration. See D. Wilson Constr. Co., Inc. v. McAllen Indep. Sch. Dist., 848 S.W.2d 226, 232 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.). The parties subsequently settled the dispute for $2,150,000. Wilson then demanded that Cris indemnify it

for the amount of the settlement agreement in accordance with the terms of a subcontract. Wilson also demanded that the matter be submitted to arbitration as required by the subcontract.

Wilson's claim arises from a February 1989 subcontract between Wilson and Cris in which Cris agreed to provide the fill dirt for the School District project in exchange for a payment of $212,000. The subcontract specifies:

[t]he Contract Documents for the Subcontract consist of this Agreement and any Exhibits attached hereto, the Agreement between the Owner and Contractor dated as of January 27, 1989, the Conditions of the Contract between the Owner and Contractor (General, Supplementary and other Conditions), the Drawings, the Specifications, all Addenda issued prior to and all Modifications issued after execution of the Agreement between the Owner and Contractor and agreed upon by the parties to the Subcontract. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein.

The general conditions of the subcontract provide:

[a]ll claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, shall be decided by arbitration, which shall be conducted in the same manner and under the same procedures as provided in the Contract Documents with respect to disputes between the Owner and the Contractor. . . .

The contract documents and the subcontract state that arbitration will be conducted according to the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"). The contract documents further specify that the contract will be governed by the law of the place where the project is located. Cris completed its contract obligations in April 1990.

In 1994, while Wilson and the School District were arbitrating and settling their dis-

---

1. As the applicable version is disputed, it will be identified in subsequent discussion.

2. 9 U.S.C. § 1, et seq. (1987).

pute, bores of the fill dirt used in the project were tested. Results indicated the fill dirt did not satisfy contract specifications. By letter dated January 23, 1995, Wilson notified Cris of the dispute and the arbitration proceedings with the School District. Although Cris was invited to lend its assistance in resolving the dispute, nothing in the record indicates that Cris responded to the invitation. In fact, Cris now contends it was not allowed to participate in the arbitration as required by the subcontract. After Wilson and the School District settled their dispute, Wilson sought to arbitrate the indemnity issue.

Wilson served its demand for arbitration on the AAA and Cris on May 18, 1995. The AAA accepted the case for arbitration, Cris responded, and three arbitrators were appointed. A preliminary hearing was held in November 1995 to establish document exchanges and discovery guidelines. A final hearing was set for June 1996, but postponed at Cris's request for voluntary mediation. When the parties could not mediate their differences, a final hearing was set for the week of March 3, 1997.

On or about February 25, 1997, Cris filed a Petition for Declaratory Judgment and to Enjoin Arbitration and Request for Temporary Restraining Order in a district court in Harris County. Cris claimed that arbitration was not mandated because (1) Wilson did not sign the subcontract, (2) the demand for arbitration was not timely, (3) the indemnity provision was unenforceable, (4) limitations barred Wilson's claim, and (5) Wilson had no legally cognizable claim. The case was transferred to Hidalgo County on May 30, 1997, by consent of the parties. Wilson filed its Plea in Abatement and Motion to Compel Mandatory Arbitration. After a hearing, the trial court denied the plea and the motion. Wilson then filed this interlocutory appeal and petition for writ of mandamus.

**3.** Although there is uncontroverted evidence in the record that the overall contract evidences a transaction involving commerce and is governed by the FAA, *see* 9 U.S.C.A. § 2 (1987), the United States Supreme Court has held parties to a contract may specify by what rules they want to arbitrate. *Volt Info. Sciences v. Board of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

### B. Mandamus or Interlocutory Appeal

The TGAA allows Wilson an interlocutory appeal in Texas Courts from the denial of a motion to compel arbitration. *See D. Wilson Constr. Co.*, 848 S.W.2d at 228. The FAA does not provide for an interlocutory appeal in state courts from the denial of a motion to compel arbitration. *Id; see Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271–73 (Tex.1992). As Wilson has done, a party challenging an order denying arbitration under the FAA must seek a writ of mandamus. *See D. Wilson Constr. Co.*, 848 S.W.2d at 228.

Thus, our first task is to determine which law applies to the contract at issue. Because the parties agreed the laws of Texas govern the contract, *i.e.*, the laws of the place where the project is located, we hold the TGAA applies,[3] *see Volt Info. Sciences v. Board of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 470, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (holding identical contract language indicated parties' intent to arbitrate under California laws), and that the proper vehicle for Wilson's complaints is an appeal. Accordingly, we deny Wilson's petition for writ of mandamus.

### C. Issues Presented on Appeal

Wilson presents five issues on appeal. Wilson complains (1) the trial court erred in denying the motion to compel arbitration and in failing to abate Cris's suit pending arbitration, (2) the trial court erred in failing to hold that the arbitrator, rather than the trial court, decides the issue of timeliness, (3) that if the trial court decides timeliness, Wilson's arbitration demand was timely, (4) the trial court erred in considering the merits of Wilson's claims or Cris's alleged defenses as grounds to avoid arbitration, and (5) Cris was estopped from questioning timeliness in the

Enforcing the rules specified by the parties is consistent with the goals of the FAA. *Id.*When the FAA is applicable, but state law is specified, the FAA will trump state law where the parties have agreed to arbitrate a claim that is not arbitrable under state law. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995).

trial court on the eve of the final arbitration hearing.

In response, Cris argues that (1) under the applicable version of the TGAA, Wilson has no right to arbitration because Wilson is not a non-profit entity, (2) Texas trial courts do decide if conditions precedent have been satisfied when considering whether to compel arbitration, (3) according to the terms of the contract documents, Wilson's arbitration demand was barred by limitations, and (4) Cris has not relinquished its right to have a trial court declare if arbitration rights exist.

D. WHICH VERSION OF THE TGAA APPLIES?

Before applying the TGAA to the facts of this case, we must determine which version of the law governs the contract at issue. Although the subcontract was made in 1989 and the dispute arose in 1995, Wilson contends the 1997 version of the TGAA should be applied retroactively. Cris argues that the 1989 or 1995 version of the Act should govern the case. Cris further contends that prior to 1997, the TGAA applied only to arbitration or controversies between members of associations or corporations exempt from the payment of federal income taxes or which are non-profit corporations. After a review, we conclude the legislature has made no substantive changes in the three versions that would affect the outcome of this case.

With the exception of amendments to article 224 and the addition of some articles not relevant to this case, the TGAA as it appeared in 1989 can be found at TEX.REV.CIV. STAT. ANN. art. 225, *et seq.* (Vernon 1973). Article 224 was amended by Act of May 26, 1979, 66th Leg., R.S., ch. 704, § 1, 1979 Tex. Gen. Laws 1708. Article 238–20, abrogating the common law rule prohibiting specific enforcement of executory arbitration agreements, was added to the TGAA in 1983, *see* Act of May 24, 1983, 68th Leg., R.S., ch. 830, 1989 Tex. Gen. Laws 4748, and amended by Act of May 21, 1985, 69th Leg., R.S., ch. 338, 1985 Tex. Gen. Laws 1406. The TGAA, including these amendments and additions, was codified with no substantive change as Title 7 of the civil practice and remedies code in 1995. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 1439, § 1, 1995 Tex. Sess.

Law Serv. 3402 (Vernon) (codified as TEX. CIV. PRAC. & REM.CODE ANN. chs. 171 & 172 (Vernon 1997)). In 1997, the Legislature made the TGAA user friendly by breaking the lengthy and wordy sections of Chapter 171 into more and shorter sections. *See* Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 5.01, 1997 Tex. Sess. Law Serv. 329. Much of the redundant language was eliminated, but the substantive meaning was unchanged. At the same time, sections 171.021–023, formerly article 238–20, were moved into Chapter 173 entitled "Arbitration of Controversies Between Members of Certain Nonprofit Entities." *See id.* at 349–50. Because no substantive changes occurred in the three versions of the TGAA, we will cite the 1997 version for the sake of convenience.

E. STANDARD OF REVIEW AND
THE APPLICABLE LAW

 Strong national and state policies exist favoring arbitration; every reasonable presumption favoring arbitration will be accepted. *D. Wilson Constr. Co.,* 848 S.W.2d at 231; *Shearson, Lehman, Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 919 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.). The construction of the arbitration agreement is viewed under general contract principles. *BDO Seidman v. Miller,* 949 S.W.2d 858, 860 (Tex.App.—Austin 1997, writ dism'd w.o.j.); *Belmont Const., Inc. v. Lyondell Petrochemical Co.,* 896 S.W.2d 352, 357 (Tex.App.—Houston [1st Dist.] 1995, no writ); *City of Alamo v. Garcia,* 878 S.W.2d 664, 665 (Tex. App.—Corpus Christi 1994, no writ). The language of a contract will be enforced according to its plain meaning unless such a reading would defeat the intention of the parties. *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex.1985). Construction of the terms of the agreement is a question of law which requires a *de novo* review. *Fridl v. Cook,* 908 S.W.2d 507, 511 (Tex.App.—El Paso 1995, writ dism'd w.o.j. ). Any fact questions concerning the existence of an arbitration agreement are reviewed under the no evidence standard. *BDO Seidman,* 949 S.W.2d at 860; *Fridl,* 908 S.W.2d at 511.

 A written agreement to arbitrate is valid and enforceable if the agreement is to

arbitrate a dispute arising between the parties after the date of the agreement. TEX. CIV. PRAC. & REM.CODE ANN. § 171.001(a)(2) (Vernon Supp.1998). The arbitration agreement may be revoked only on grounds existing at law or in equity. *Id.* at (b). A court shall compel arbitration upon proof of an agreement to arbitrate and the opposing parties refusal to arbitrate. TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a) (Vernon Supp. 1998). In like manner, a court may stay an arbitration commenced upon a showing that no arbitration agreement existed. TEX. CIV. PRAC. & REM.CODE ANN. § 171.023(a) (Vernon Supp.1998). Once the existence of an arbitration agreement is shown, the party seeking to avoid the effects of the agreement may do so by establishing that the dispute is not within the terms of the agreement. *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995); *Prudential Sec., Inc. v. Banales,* 860 S.W.2d 594, 597 (Tex.App.—Corpus Christi 1993, no writ). A court may not refuse to order arbitration because a claim lacks merit or bona fides, or because the ground for the claim is not shown. TEX. CIV. PRAC. & REM.CODE ANN. § 171.026 (Vernon Supp.1998).

In the case before us, the parties do not dispute the existence of an arbitration agreement or that a claim for indemnity falls within the parameters of the agreement. Instead, Cris contends that claims brought by "for profit" companies, such as Wilson and Cris, are not covered by the TGAA, but by common law. Cris further argues that Wilson is not entitled to rely on the arbitration agreement because the condition precedent of demanding arbitration within the contractual limitations period was not complied with. In response, Wilson asserts that the arbitrators, not the trial court, should resolve the question of timeliness or, in the alternative, that demand for arbitration was timely.

### F. *Applicability of the TGAA*

■ Cris asks us to hold that at the time the contracts were made and at the time this dispute arose, the TGAA only applied to non-profit entities. Cris relies on article 238–20, section 3 to support this request. As stated previously, article 238–20, in its entirety, was codified in 1995 as section 171.022 and moved to Chapter 173 in 1997. Section 173.002, formerly section 3 of article 238–20, provides:

> This chapter applies only to the arbitration of a controversy between members of an association or corporation that is:
>
> (1) exempt from the payment of federal income taxes under Section 501(a) of the Internal Revenue Code of 1986 by being listed as an exempt organization under Section 501(c) of the code; or
>
> (2) incorporated under the Texas Non-Profit Corporation Act (Article 1396–1.01 et seq., Vernon's Texas Civil Statutes).

TEX. CIV. PRAC. & REM.CODE ANN. § 173.002 (Vernon Supp.1998).

Before this language was moved to Chapter 173, reading this provision out of context from preceding sections would seem to support Cris's argument that the TGAA is limited to disputes involving members of non-profit entities. After reviewing case law interpreting the TGAA from the time this provision was added in 1983 to the present, we find no case that limits the applicability of the TGAA in the manner Cris suggests. Our research revealed that only one appellate court, the Texarkana Court of Appeals, has considered the issue. *See Holk v. Biard,* 920 S.W.2d 803, 807 (Tex.App.—Texarkana 1996, orig. proceeding). After an extensive study, the Texarkana Court concluded the Legislature intended this provision to apply only to specific performance of executory arbitration agreements like those found in the bylaws of non-profit corporations. *Id.* The court reached this conclusion in part because Texas has adopted the Uniform Arbitration Act which is not limited to non-profit corporations. *Id.* at 808.

We agree with our sister court's conclusion. To interpret the provision as Cris requests would abrogate the remainder of the TGAA which, since enacted in 1965, has expressly applied, save for the few exceptions

listed in section 171.002,[4] to any controversy between parties who have a written agreement to arbitrate. *See* TEX.REV.CIV. STAT. ANN. art. 224 (Vernon 1973) (repealed 1995) (current version at TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001, 171.002 (Vernon Supp.1998)).[5] Accordingly, we conclude the TGAA applies to the parties before us.

### G. CONDITIONS PRECEDENT

#### 1. *Who Decides?*

■ In its second issue, Wilson contends the trial court erred in failing to hold that the arbitrator, not the trial court, decides whether Wilson's arbitration demand was timely under the contract. Cris argues that Wilson is not entitled to rely on the arbitration agreement contained in the contracts because Wilson breached the conditions precedent to demanding arbitration. Specifically, Cris argues that Wilson did not make its arbitration demand within the limitations period as prescribed by the contracts. The parties disagree about who has the ultimate authority to determine whether a condition precedent has been breached, the trial court or the arbitrators.

In two relatively recent opinions, this Court has affirmed trial court decisions that a party is not entitled to demand arbitration if conditions precedent to the demand are not satisfied. *See L & L Kempwood Assoc., L.P. v. Omega Builders, Inc.,* 972 S.W.2d 819, 824 (Tex.App.—Corpus Christi 1998, pet. pending); *City of Alamo,* 878 S.W.2d at 666. Both of these cases involved the TGAA. Other Texas appellate courts have held similarly. *See Weekley Homes, Inc. v. Jennings,* 936 S.W.2d 16 (Tex.App.—San Antonio 1996, writ denied); *Belmont Constr.,* 896 S.W.2d at 358. *But see City of Lubbock v. Hancock,* 940 S.W.2d 123, 127 (Tex.App.—Amarillo 1996, orig. proceeding) (holding that, as with FAA, when applying TGAA, effects of breaches of conditions precedent are decided by arbitrators not trial court). In light of our prior holdings, we conclude the trial court could determine whether the breach of a condition

precedent, if any, would bar Wilson's right to demand arbitration. Wilson's second issue is overruled.

#### 2. *Was There a Timely Demand?*

Wilson's third issue asks: "If the Trial Court decides timeliness, whether Wilson demanded Cris arbitrate Wilson's claims within the period set out in the contract."

■ A condition precedent is either a condition to the formation of an agreement or events that must occur before there is a right to performance under the contract. *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976); *Sheldon L. Pollack Corp. v. Falcon Indus., Inc.,* 794 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1990, writ denied); *see Love of God Holiness Temple Church v. Union Standard Ins. Co.,* 860 S.W.2d 179, 180 (Tex.App.—Texarkana 1993, writ denied). Breach of a condition precedent affects the enforceability of the provision to which it is attached. *Weekley Homes, Inc.,* 936 S.W.2d at 18; *City of Alamo,* 878 S.W.2d at 665. Thus, we must determine if, according to the terms of the arbitration agreement at issue, a timely demand is a condition precedent to the enforceability of the agreement.

Article 13.1 of the subcontract provides:

All claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, shall be decided by arbitration, *which shall be conducted in the same manner and under the same procedure as provided in the Contract Documents with respect to disputes between the Owner and the Contractor, except that a decision by the Architect shall not be a condition precedent to arbitration.* If the Contract Documents do not provide for arbitration or fail to specify the manner and procedure for arbitration, it shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then

---

4. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.002 (Vernon Supp.1998).

5. We note that, given the evidence of interstate commerce involved in the overall contract, to adopt Cris's argument would mandate application of the FAA to the case.

obtaining unless the parties mutually agree otherwise. (emphasis added)

The emphasized language could be interpreted to mean the parties agreed to arbitrate subcontract disputes as long as any manners and procedures set forth in the contract documents were satisfied, however, such disputes did not have to be first submitted to the architect for a decision. We must, therefore, decide what manner and procedure, if any, is specified in the contract documents regarding limitations periods.

Article 4, paragraph 4.5 of the contract documents provides the procedure for arbitration. Clause 4.5.4.2 states:

> A demand for arbitration shall be made within the time limits specified in Subparagraphs 4.5.1 and 4.5.4 and Clause 4.5.4.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7.

Because the time limits of the subparagraphs and clauses of article 4 are not applicable to the facts of this case, we look to paragraph 13.7 for guidance.

Paragraph 13.7, entitled "Commencement of Statutory Limitation Period," sets forth three possible accrual dates for causes of action. Subparagraph 13.7.1 provides that as between the Owner and Contractor:

> .1 **Before Substantial Completion.** As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion.

> .2 **Between Substantial Completion and Final Certificate for Payment.** As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any

> alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and

> .3 **After Final Certificate for Payment.** As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any warranty provided under Paragraph 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Paragraph 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

Cris completed its work in April 1990, and substantial completion occurred in October 1990. Cris contends the first clause, "Before Substantial Completion," controls this case because the alleged acts or failures to act would have occurred during that period.

Wilson, on the other hand, argues the third clause applies because it had no right to indemnity until Wilson paid the School District according to the terms of the settlement agreement, which occurred after the final certificate for payment was issued. Wilson also argues that its cause of action for indemnity against Cris did not accrue until the School District was paid in March 1995; thus, the limitations period has not expired. In the alternative, Wilson asserts the third clause is applicable because Cris's warranty obligations extended for one year after the date of substantial completion, and the limitations period for breach of warranty causes of action would not run until October 1995. Thus, the demand for arbitration, made in May 1995, was timely.

 In the case of a promise to indemnify against liability, a cause of action accrues to the indemnitee only when the liability has become fixed and certain, as by rendition of a judgment. *Tubb v. Bartlett,*

862 S.W.2d 740, 750 (Tex.App.—El Paso 1993, writ denied); *Holland v. Fidelity & Deposit Co. of Md.,* 623 S.W.2d 469, 470 (Tex.App.—Corpus Christi 1981, no writ); *Russell v. Lemons,* 205 S.W.2d 629, 631 (Tex. Civ.App.—Amarillo 1947, writ ref'd n.r.e.). With respect to a promise to indemnify against damages, a right to bring suit does not accrue until the indemnitee has suffered damage or injury by being compelled to pay the judgment or debt. *Tubb,* 862 S.W.2d at 750; *Holland,* 623 S.W.2d at 470; *Russell,* 205 S.W.2d at 631.

▐ The civil practice and remedies code provides that a person must bring suit on a cause of action for debt not later than four years after the day the cause of action accrues. TEX. CIV. PRAC. & REM.CODE ANN § 16.004(a)(3) (Vernon 1986). The section 16.004(a)(3) limitations period on an action for debt includes all suits brought to recover money for breach of contract. *Ingersoll–Rand Co. v. Valero Energy Corp.,* 953 S.W.2d 861, 867 (Tex.App.—Corpus Christi 1997, pet. granted); *Perez v. Gulley,* 829 S.W.2d 388, 390 (Tex.App.—Corpus Christi 1992, writ denied). Wilson's indemnity and breach of warranty claims are contract causes of action subject to the four-year statute of limitations. If Cris is correct about an October 1990 accrual date, Wilson's demand for arbitration is barred. If, however, Wilson is correct, limitations did not run on either claim.

▐ We hold the third clause is the applicable limitations period for this cause of action and that Wilson's demand for arbitration was not time-barred when made. To limit Wilson's claims as Cris seeks, would obviate the need for the third clause because all claims would accrue either on the date of substantial completion or when the final certificate for payment was issued. The warranty provision in the contract documents would be meaningless because all warranty claims against Cris would have accrued on the date of substantial completion rather than within one year after that date as provided by the warranty clause. Limitations would also begin to run on Wilson's right to indemnity from Cris at the time of substantial completion. Thus, Wilson's entitlement

to indemnity, if any, which might accrue because of warranty work it performed or because of a final judgment paid by Wilson for problems attributable to Cris, would be eliminated. After reading the contract documents in context, we conclude such was not the intent of the parties. Because limitations does not bar Wilson's claims, the trial court erred if it denied Wilson's motion to compel arbitration on that ground. We sustain Wilson's third issue.

### H. OTHER GROUNDS FOR DENIAL

▐ The trial court's order did not specify a reason for denying the motion to compel arbitration. In addition, the record does not include a request for findings of fact and conclusions of law, and the trial court did not file any findings and conclusions. When no findings of fact or conclusions of law are filed or requested, an appellate court implies that the trial court made all the necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992); *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980); *Dotzler v. Coldwell Banker Island Realtors,* 941 S.W.2d 315, 317 (Tex.App.—Corpus Christi 1997, no writ). When findings of fact and conclusions of law are not requested and none are filed, we must affirm the trial court's judgment if we can uphold it on any legal theory that finds support in the record. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex.1977), *(overruled on other grounds) Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 770 (Tex.1989); *Dotzler,* 941 S.W.2d at 317.

▐ The record in this case reflects that the trial court correctly dismissed Cris's argument that Wilson was not entitled to arbitration because no Wilson representative signed the subcontract. The TGAA specifies only that the arbitration agreement be written. TEX. CIV. PRAC. & REM.CODE ANN. § 171.001. Only in certain instances, not applicable to this case, must the agreement be signed by the parties and their attorneys. TEX. CIV. PRAC. & REM.CODE ANN. § 171.002.

▐ Cris alleged it was prevented in some way from presenting evidence at the arbitration proceeding between Wilson and

the School District. According to Cris, such prevention breached a subcontract provision which required: "The Contractor shall permit the Subcontractor to be present and to submit evidence in any arbitration proceeding involving his rights." The record does not support this allegation. Instead, the record shows that once the alleged cause for the School District's claims became known, Wilson sent Cris a notice about the arbitration proceedings. Cris apparently did not attempt to present evidence during the proceedings. We find nothing in the record showing that Wilson prevented Cris from presenting evidence at the arbitration proceeding between Wilson and the School District. If the trial court denied Wilson's motion to compel on this basis, it was error.

## I. CONCLUSION

By its first issue, Wilson contends the trial court erred in denying Wilson's motion to compel arbitration and in failing to abate Cris's suit pending arbitration.

We have held the trial court erred in determining (1) that Wilson's demand for arbitration was barred by limitations and (2) that Cris was prevented from participating in the arbitration proceeding between Wilson and the School District. We hold the trial court erred in denying Wilson's motion to compel arbitration and in failing to abate Cris's suit pending arbitration. Wilson's first issue is sustained.

In light of our disposition, it is not necessary to address Wilson's fourth and fifth issues. TEX.R.APP. P. 47.1.

In Cause No. 13–98–439–CV, we deny Wilson's petition for writ of mandamus

In Cause No. 13–98–373–CV, we reverse the trial court's order and remand the case to the trial court. The trial court is ordered to abate the underlying suit and to compel Cris Equipment Company, Inc. to submit all claims against D. Wilson Construction Co. to arbitration.