**BELMONT CONSTRUCTORS, INC., Appellant,**

v.

**LYONDELL PETROCHEMICAL COMPANY, Appellee.**

**Nos. 01–94–00065–CV, 01–94–00235–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 23, 1995.

Rehearing Overruled March 23, 1995.

Larry D. Thompson, Diane M. Guariglia, William K. Andrews, Mary Frances Lapidus, Houston, for appellant.

Thomas M. Farrell, Solace H. Kirkland, Houston, for appellee.

Before COHEN, ANDELL and WILSON, JJ.

## OPINION

WILSON, Justice.

Appellant/Relator, Belmont Constructors, Inc. (Belmont), appeals the trial court's denial of its motion to compel arbitration with appellee, Lyondell Petrochemical Co. (Lyondell).

Pursuant to the Texas Arbitration Act (the Texas Act), Belmont has filed an interlocutory appeal of the trial court's order denying the motion. In addition, pursuant to the Federal Arbitration Act (the Federal Act), Belmont has filed a motion for leave to file a petition for writ of mandamus, claiming the trial court abused its discretion by denying the motion.

We conclude the Federal Act applies to the contract between the parties, and we dismiss Belmont's appeal of the trial court's interloc-

utory order. Additionally, we overrule Belmont's motion for leave to file petition for writ of mandamus.

## Summary of Facts

Lyondell hired Belmont to build a new chemical plant. This construction plan was called the Flex Expansion Project. The parties entered into a written contract for the construction of this project. Disputes arose between the parties as to the completion of the plant. Representatives of each company agreed to submit the dispute to mediation. The mediation was not successful. Lyondell then filed suit alleging causes of action for fraud, negligent misrepresentation, and negligence, and requested a declaratory judgment. Belmont initiated arbitration proceedings to resolve the matter on October 11, 1993. Belmont also filed a plea in abatement with the trial court, arguing a mandatory arbitration clause in the contract required the parties submit their dispute to arbitration rather than proceed with litigation. Belmont then filed a motion to compel arbitration, and the trial court denied the motion.

Belmont claims an arbitration provision in the contract with Lyondell is enforceable under the Texas Act, and alternatively, under the Federal Act. Belmont appeals the interlocutory order of the trial court and alternatively, seeks relief from the trial court's decision by petition for writ of mandamus.

■ Under the Texas Act, when a party contests the applicability of an arbitration provision in a contract, the court must proceed summarily to decide the issue. TEX. REV.CIV.STAT.ANN. art. 225, § A (Vernon 1973). The Texas Act permits an interlocutory appeal from a trial court order denying an application to compel arbitration. TEX. REV.CIV.STAT.ANN. art. 238–2, § A(1) (Vernon 1973). Although the Federal Act also permits a party to appeal from an interlocutory order denying a request to compel arbitration,[1] federal procedure does not apply in Texas courts, even when Texas courts apply the Federal Act. *See Southland Corp. v. Keating,* 465 U.S. 1, 16 n. 10, 104 S.Ct. 852, 861 n. 10, 79 L.Ed.2d 1 (1984); *Anglin v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992).

When Texas courts must decide whether disputed claims fall within the scope of an arbitration clause under the Federal Act, Texas procedure controls that determination. *Anglin,* 842 S.W.2d at 268. Texas procedure allows appeals of interlocutory orders only if permitted by statute. *Id.* at 272. An order from the trial court denying arbitration under the Federal Act does not fall within a statutory exception. *Id.* As the Texas Supreme Court has observed, "[L]itigants who allege entitlement to arbitration under the Federal Act, and in the alternative, under the Texas Act, are burdened with the need to pursue parallel proceedings—an interlocutory appeal of the trial court's denial under the Texas Act, and a writ of mandamus from the denial under the Federal Act." *Id.*

The trial court did not specify in its judgment whether the Texas or Federal Act governed the arbitration provision of the parties' contract. Accordingly, Belmont has followed the requirement of these parallel proceedings by filing an appeal and a motion for leave to file a petition for writ of mandamus. We must therefore consider whether the Texas or Federal Act applies to the dispute between the parties to determine the proper procedural disposition of the case.

## Federal or State Arbitration Act

■ The Federal Act applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2 (1987). Commerce under the Federal Act is broadly construed, and whether a particular arbitration agreement is controlled by the Federal Act is determined by whether the contract relates to interstate commerce. *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987); *Anglin,* 842 S.W.2d at 269–70; *Lost Creek Mun. Util. Dist. v. Travis Painters, Inc.,* 827 S.W.2d 103, 105 (Tex. App.—Austin 1992, writ denied).

The trial court did not determine whether the Federal or Texas Act applies to this dispute. On appeal, Lyondell does not argue for or against the characterization of the contract as one involving interstate commerce. In its response to Belmont's motion to compel, Lyondell stated it "does not dis-

---

1. 9 U.S.C. § 16 (Supp.1994).

pute that the Flex Expansion Project involved interstate commerce."

The following uncontroverted facts support the conclusion that the contract relates to interstate commerce.

1. Several significant components of the construction project were produced in states other than Texas, namely Oklahoma and Colorado.

2. Subcontractors to Belmont have their principal places of business outside Texas. Belmont received invoices from these subcontractors and returned payment by mail to the home offices outside Texas.

3. The subcontractors were insured by companies located outside Texas.

4. Interstate mail and telephone calls were used in the management of the project.

5. Belmont was insured by Lloyd's of London, also located outside Texas.

We find the contract at issue relates to interstate commerce and the Federal Act applies to this dispute. Therefore, Belmont may seek relief through the remedy of a writ of mandamus. *Anglin,* 842 S.W.2d at 272–73. Accordingly, we dismiss Belmont's interlocutory appeal and proceed to consider its motion for leave to file petition for writ of mandamus.

## Arbitration Agreement

A writ of mandamus will issue only to correct a clear abuse of discretion or violation of a duty imposed by law when that abuse cannot be remedied by appeal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

A court may compel arbitration only if the parties have entered a written agreement to submit disputes to arbitration. 9 U.S.C. § 2 (1987). Therefore, our initial inquiry is to determine whether the parties entered into such an agreement. *Genesco, Inc. v. T. Kakiuchi & Co, Ltd.,* 815 F.2d 840, 844 (2nd Cir.1987); *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 920 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.). Once it is determined the parties agreed to arbitrate certain disputes, a court must compel arbitration on those issues made part of the agreement. *Dean Witter*

*Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985); *Shearson Lehman Hutton, Inc. v. McKay,* 763 S.W.2d 934, 937 (Tex.App.—San Antonio 1989, orig. proceeding).

Whether parties have agreed to arbitrate is a question of fact for the trial court to decide. *Genesco, Inc.,* 815 F.2d at 845. This finding may be challenged for legal sufficiency, or "no evidence." *Wetzel v. Sullivan, King, & Sabom, P.C.,* 745 S.W.2d 78, 79 (Tex.App.—Houston [1st Dist.] 1988, no writ). In evaluating such a challenge, we look only at the evidence tending to support the finding under attack and disregard evidence to the contrary. *Id.* at 79. Therefore, we review the record to determine whether there is any evidence to support the finding of the trial court that based on these facts, arbitration of the dispute between the parties was not required under the contract.

Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1985). The Federal Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language or an allegation of waiver, delay, or a like defense to arbitrability. *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941. This presumption in favor of arbitration is imposed whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt. *Beckham v. William Bayley Co.,* 655 F.Supp. 288, 290 (N.D.Tex.1987).

However, this federal policy of resolving doubts in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or allow modification of the plain and unambiguous provisions of an agreement. *Beckham,* 655 F.Supp. at 291–92; *Babcock & Wilcox Co. v. PMAC, Ltd.,* 863 S.W.2d 225, 230 (Tex.App.—Houston [14th Dist.] 1993, no writ). While courts may enforce arbitration agreements, a court may not order arbitra-

tion in the absence of such an agreement. *Freis v. Canales,* 877 S.W.2d 283, 284 (Tex. 1994).

The contract between the parties was drafted by Lyondell. The provision of the contract regarding resolution of disputes states in part as follows:

XXXIII. ALTERNATIVE DISPUTE RESOLUTION

In the event that there is any claim, dispute or other matter, arising out of or related to this Contract ... or from the breach or alleged breach thereof, the parties shall initially cooperate in good faith to resolve the same between executives of the parties who do not have direct responsibility for administration of this contract, and will explore whether techniques such as mediation, mini-trials, mock trial or other techniques of alternative dispute resolution might be useful in resolving the matter in question. *If the parties cannot agree within 10 days on a different method of resolving the matter, the matter shall be submitted by the parties to and be decided by binding arbitration....* The demand for arbitration shall be made within a reasonable time after the time period stated above for the parties to agree on an alternate means of resolving the matter has expired....

(Emphasis added.)

Lyondell contends the italicized language contains a condition precedent to submitting a dispute to arbitration that was not triggered because the parties agreed to a different method of resolving their dispute, namely mediation. According to Lyondell, because the parties agreed to submit their dispute to mediation, the language concerning mandatory arbitration was not implicated, even though the mediation did not result in a successful resolution of the dispute.

Belmont claims the clear language of the contract requires mandatory arbitration on these facts. Alternatively, Belmont argues the contract provision is ambiguous and should therefore be construed against Lyondell in accord with the federal presumption favoring arbitration.

■ Arbitration is a creature of contract and a clause requiring arbitration will be interpreted under contract principles. *City of Alamo v. Garcia,* 878 S.W.2d 664, 665 (Tex.App.—Corpus Christi 1994, no writ). When a party seeks to compel arbitration, he must first establish his right to that remedy under the contract. *Id.; Tucker,* 806 S.W.2d at 920.

■ The language of a contract will be enforced according to its plain meaning, unless such a reading would defeat the intention of the parties. *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex.1985); *GT & MC, Inc. v. Texas City Refining, Inc.,* 822 S.W.2d 252, 255–56 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Conditional language, such as "if," is indicative that a condition precedent was intended by the parties. *Criswell v. European Crossroads Shopping Ctr., Ltd.,* 792 S.W.2d 945, 948 (Tex.1990); *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976).

■ The provision for mandatory arbitration in this contract is preceded by the language, "If the parties cannot agree within 10 days on a different method of resolving the matter...." We conclude such language created a condition precedent to mandatory arbitration. The contract provided for mandatory arbitration only in the event the parties could not first agree on an alternate method of resolving their dispute. The parties agreed to participate in mediation as a method of resolving their dispute within the required 10 days. Mediation is specifically listed in the sentence preceding the condition, and was apparently contemplated by the parties as a possible method of resolving disputes. Although the mediation was not successful, the condition precedent to submitting the dispute to mandatory arbitration was not satisfied. The trial court, applying the plain language of the contract, denied the motion to compel arbitration because, as applied to these facts, arbitration was not mandatory.

■ Belmont argues the arbitration provision should be read as a covenant rather than as a condition, because to read it as a condition imposes an absurd result. Gener-

ally, courts prefer to read contractual provisions as covenants rather than conditions. *See Hohenberg Bros. Co.*, 537 S.W.2d at 3. In the absence of conditional language, whether a certain contractual provision is a condition, rather than a promise, must be determined from the contract as a whole and from the intent of the parties. *Id.* If the intent of the parties is not clear, or the condition imposes an absurd result, the language will be read as a covenant rather than a condition. *Id.* Belmont argues the language of the arbitration provision creates an absurd result, given the federal and state policies strongly favoring arbitration. Belmont contends that to read the clause as containing a condition precedent would encourage bad faith participation in alternative dispute resolution in order to avoid mandatory arbitration.

Lyondell contends the result is not absurd. Reading the clause as a whole, the apparent intent of the parties is to employ some type of alternative dispute resolution before resorting to litigation. By the terms of the contract, arbitration is the default method of resolution when the parties are unable to agree on some other method. We do not find that the plain language of the contract creates an absurd result when the arbitration provision of the contract is read as a condition.

Viewing the contract as a whole, we note other portions that further indicate the intent of the parties was not to require mandatory binding arbitration after another method of alternative dispute resolution is used. The contract contains a provision addressing the allocation of attorneys' fees, court costs, and expenses. The provision, entitled "Attorneys' Fees," states:

> In the event of a dispute under this Contract, the prevailing party (as determined by alternative dispute resolution pursuant to Article XXXIII, *or otherwise*) shall be entitled to its attorneys' fees, alternative dispute resolution expenses and/*or court costs* incurred as a consequence of such dispute.

**2.** "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration ... and judgment upon the award rendered by the Arbitrator(s)

(Emphasis added.) The language of this provision indicates court costs and alternative dispute resolution expenses are recoverable by the parties. This provision leaves open the possibility of the parties proceeding to litigation when alternative dispute resolution does not successfully resolve their dispute. The parenthetical language, "or otherwise," further indicates that a dispute could be resolved by methods other than alternative dispute resolution, such as litigation.

Additionally, we note the contract at hand does not contain a standard "broad form" arbitration clause. The court in *Beckham* set forth an example of a broad form arbitration clause.[2] The arbitration clause in this contract varies a great deal from the standard clause language. The provisions for arbitration are included with provisions providing for other non-binding methods of alternative dispute resolution. The provision for submitting a dispute to arbitration is preceded by conditional language. The failure to use a standard broad form arbitration clause may be considered evidence that the parties intended to limit the arbitrable issues and the circumstances requiring arbitration. *See Beckham*, 655 F.Supp. at 291. The variance from the standard arbitration clause in this case is evidence that the parties intended to submit disputes to arbitration only if the parties were unable to agree on another method of resolution, which could include non-binding mediation.

As noted above, we dismiss Belmont's appeal. We also conclude there is evidence in the record supporting the trial court's ruling that based on these facts, arbitration of the disputes between the parties was not required under the contract. Accordingly, we find the trial court did not abuse its discretion in overruling Belmont's motion to compel arbitration and we overrule Belmont's motion for leave to file petition for writ of mandamus.

may be entered in any Court having jurisdiction thereof." *Beckham*, 655 F.Supp. at 291 (quoting Hoellering, *Arbitrability of Disputes*, 41 THE BUSINESS LAWYER 125 (Nov. 1985)).