Opinion issued April 25, 2002












 





In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00606-CV

____________



IN RE FULTON PERFORMANCE PRODUCTS, INC., Relator







Original Proceeding on Petition for Writ of Mandamus






O P I N I O N

 By petition for writ of mandamus, relator, Fulton Performance Products, Inc.
(Fulton), challenges the trial court's April 5, 2001 order denying, in part, Fulton's
motion to compel arbitration between Fulton and real party in interest, Penske Truck
Leasing Company, L.L.P. (Penske).

 We deny Fulton's petition for writ of mandamus.

Factual and Procedural Background


 Penske rents tow dollies to its customers for them to use when towing
automobiles. Some of Penske's tow dollies contained a component part known as a
"Model 308 Fulton coupler," which was sold to Penske through Fulton's distributor,
Dethmers Manufacturing Company (Demco). (1)

 In February 1997, Penske and Fulton reached a confidential settlement
agreement regarding certain claims brought against Penske by its customers and third
parties for losses allegedly resulting from the decoupling of tow dollies secured by
Fulton couplers. As part of this agreement, Fulton provided replacement couplers and
agreed to reimburse Penske for the amounts paid by Penske on claims related to the
"original" couplers, totaling $135,527.98. In exchange, in a section of the settlement
agreement entitled "Limited Release," Penske agreed to 

 [R]elease and forever discharge Fulton . . . from all claims, demands,
causes of action or other rights [Penske] may have against Fulton on
account of damages, costs, fees, and other expenses [Penske] may have
incurred in settling the claims. This release is not intended to be a
release by Penske . . . of any demands [it] may have against Fulton on
account of personal injury or property damage arising out of use of an
Original Coupler, other than for those Claims for which Penske has
obtained a release.


In a section of the settlement agreement entitled "Indemnity," Penske also agreed to 

 [D]efend, indemnify and hold harmless Fulton . . . from any claim
brought against Fulton . . . by Claimants arising out of Claims for which
Penske has obtained a release; provided, however, that in the event a
claim is brought against Fulton . . . and Fulton . . . ha[s] not been
released in any document executed by that Claimant, this indemnity
shall be limited to the amount Penske has been reimbursed by Fulton in
exchange for that Claimant's release (it being agreed that Exhibit 1
hereto sets forth the reimbursement amount for each Claim).


 The arbitration clause at issue is contained in paragraph seven of the settlement
agreement and specifies that "[a]ll disputes, controversies or differences which may
arise between the parties, out of, in relation to or in connection with this Agreement
or for the breach thereof, which cannot be settled by the parties themselves, shall be
settled by final and binding arbitration," and that "the Federal Arbitration Act shall
govern the interpretation and enforcement of this paragraph 7."

 Attached to the settlement agreement as "Exhibit 1" is a list of the claims
settled by Penske related to the couplers. The specific claim at issue here totaled
$9,837.51 and consisted of payments to "Houston Police Dept." and "Investigative
Intl." The parties agree that these payments represent the property damage claims
arising from a September 27, 1994 accident involving Gary McDaniel, a former
Houston Police Officer. (2) Next to the entry on "Exhibit 1" for the McDaniel property
damage claims is a typed notation which reads, "*BI claim still open, reserve our
right for reimbursement when paid." (3)

 In December 1996, Penske had been sued by McDaniel in connection with an
accident involving a Fulton coupler. In his first amended original petition, McDaniel
had named Penske as a defendant, alleging negligence and product liability claims
and seeking recovery of personal injury damages. In July 1998, after the underlying
February 1997 settlement agreement was reached, Penske filed a third-party petition
naming Fulton as a third-party defendant in the McDaniel case. Penske and other
defendants, not including Fulton, subsequently settled the McDaniel lawsuit. As part
of that settlement, Penske released Fulton from Penske's third-party claims.

 Fulton sent a demand for arbitration to Penske in September 2000, seeking
recovery of its attorney's fees and expenses incurred in the defense of the McDaniel
personal injury claims, as well as recovery of the $9,837.51 Fulton had paid in
settlement of the McDaniel property damage claim under the February 1997
settlement agreement. The parties agree that, at some point during the McDaniel
litigation, it was discovered the coupler at issue in that lawsuit was not an "original"
coupler, but a "replacement" coupler. (4)

 Penske then filed a separate declaratory judgment action seeking a ruling from
the trial court that the arbitration provision of the parties' settlement agreement did
not apply to Fulton's claims for reimbursement of its attorney's fees and expenses
incurred in the McDaniel personal injury lawsuit. In response, Fulton filed a motion
to stay the declaratory judgment action and to compel arbitration under the arbitration
clause of the parties' settlement agreement.

 In its April 5, 2001 order, the trial court granted Fulton's motion to compel
arbitration on its claim for reimbursement of the amount Fulton paid Penske under the
settlement agreement for McDaniel's property damage claim. Neither party
challenges this ruling. The trial court denied Fulton's motion to compel arbitration
regarding its claim for reimbursement of its attorney's and expenses incurred in the
McDaniel personal injury lawsuit. It is this interlocutory ruling which Fulton
challenges.

Order Denying Arbitration


 In its sole issue, Fulton argues the trial court erred in denying its motion to
compel arbitration on Fulton's claim for reimbursement of its attorney's fees and
expenses incurred as a third-party defendant in the McDaniel personal injury lawsuit.

 As noted above, the parties' February 1997 settlement agreement contains an
arbitration clause which provides that its interpretation and enforcement shall be
governed by the Federal Arbitration Act (FAA). Thus, assuming Fulton's claims fall
within the scope of the parties' arbitration agreement, the FAA applies.

Standard of Review

 Mandamus is the proper means for reviewing an order denying arbitration
under the FAA. Cantella & Co., Inc. v. Goodwin, 924 S.W.2d 943, 945 (Tex. 1996);
Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992). Mandamus will
issue only to correct a clear abuse of discretion or violation of a duty imposed by law
when that abuse cannot be remedied by appeal. Anglin, 842 S.W.2d at 271. A trial
court abuses its discretion when it fails to analyze or apply the law correctly. Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).

 Federal and state law strongly favor arbitration. Cantella, 924 S.W.2d at 944. 
A presumption exists in favor of agreements to arbitrate under the FAA. Prudential
Sec., Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995). Courts must resolve any
doubts about an agreement to arbitrate in favor of arbitration. Cantella, 924 S.W.2d
at 944; Marshall, 909 S.W.2d at 899. Once a party seeking to compel arbitration
establishes that an agreement exists under the FAA and that the claims raised are
within the scope of the agreement, a trial court has no discretion but to compel
arbitration and stay its proceedings pending arbitration. Cantella, 924 S.W.2d at 944
(citing Shearson Lehman Bros., Inc. v. Kilgore, 871 S.W.2d 925, 928 (Tex.
App.--Corpus Christi 1994, orig. proceeding)).

 However, the strong federal policy of resolving doubts in favor of arbitration
cannot serve to stretch a contractual clause beyond the scope intended by the parties
or allow modification of the plain and unambiguous provisions of an agreement.
Belmont Constructors., Inc. v. Lyondell Petrochemical Co., 896 S.W.2d 352, 356
(Tex. App.--Houston [1st Dist.] 1995, no writ). While courts may enforce arbitration
agreements, a court may not order arbitration in the absence of such an agreement. 
Freis v. Canales, 877 S.W.2d 283, 284 (Tex. 1994); Hou-Scape, Inc. v. Lloyd, 945
S.W.2d 202, 205 (Tex. App.--Houston [1st Dist.] 1997, orig. proceeding) ("A party
cannot be required to arbitrate unless it has agreed to do so.").

 Arbitration is a creature of contract, and a clause requiring arbitration will be
interpreted under contract principles. Belmont Constructors, 896 S.W.2d at 357. A
party seeking to compel arbitration must establish its right to that remedy under the
contract. Id. Contractual language will be enforced according to its plain meaning,
unless such a reading would defeat the intention of the parties. Lyons v. Montgomery,
Inc., 701 S.W.2d 641, 643 (Tex. 1985). The parties' agreement and intent to submit
to arbitration must be unambiguous. Porter & Clements, L.L.P. v. Stone, 935 S.W.2d
217, 220 (Tex. App.--Houston [1st Dist.] 1997, orig. proceeding). Construction of
an unambiguous contract is a question of law. See MCI Telecomms. Corp. v. Texas
Utils. Elec. Co., 995 S.W.2d 647, 650-51 (Tex. 1999).

Scope of Arbitration Agreement

 The arbitration clause in the settlement agreement is a "broad form" clause. (5) 
Fulton contends that, because the parties agreed to a broad form arbitration clause,
Penske is required to present "the most forceful evidence of purpose" to exclude
Fulton's claim from the scope of the arbitration clause. See Babcock & Wilcox Co.
v. PMAC, Ltd., 863 S.W.2d 225, 230 (Tex. App.--Houston [14th Dist.] 1993, writ
denied) ("In such instances, absent any express provision excluding a particular
grievance from arbitration, only the most forceful evidence of purpose to exclude the
claim from arbitration can prevail.").

 Penske argues that, although the property damage portion of McDaniel's claim
was mistakenly included in the February 1997 settlement agreement and is thus
within the scope of the agreement's arbitration clause, McDaniel's personal injury
claim was specifically excluded from that agreement by the notation on Exhibit 1
which reads, "*BI claim still open, reserve our right for reimbursement when paid." 
Penske also relies on the language in the section of the settlement agreement entitled
"Limited Release" which reads, in relevant part, "This release is not intended to be
a release by Penske . . . of any demands [it] may have against Fulton on account of
personal injury or property damage arising out of use of an Original Coupler, other
than for those Claims for which Penske has obtained a release." (Emphasis added.) 
Penske contends the language of the settlement agreement expressly excludes
McDaniel's personal injury claim from the scope of the settlement agreement and the
arbitration clause. 

 We agree. Exhibit 1 to the parties' settlement agreement made it clear that
McDaniel's personal injury claim had not been settled and was not a claim "for which
Penske ha[d] obtained a release." Thus, whether it was related to an accident
involving an original coupler, as initially erroneously believed, or a replacement
coupler, McDaniel's personal injury claim was expressly excluded from the terms of
the settlement agreement, and therefore not within the scope of the agreement's
arbitration clause.

 As noted by the court in Babcock, and by this Court in Belmont Constructors,
the strong federal policy for resolving doubts in favor of arbitration cannot serve to
stretch a contractual clause beyond the scope intended by the parties. Babcock, 863
S.W.2d at 230; Belmont Constructors, 896 S.W.2d at 356. We must enforce the
language in the parties' settlement agreement according to its plain meaning. Lyons,
701 S.W.2d at 643. 

 We hold the trial court did not err in denying Fulton's motion to compel
arbitration as to its claim for reimbursement of attorney's fees and expenses incurred
in the McDaniel personal injury lawsuit. We overrule Fulton's sole issue.

Conclusion


 We deny Fulton's petition for writ of mandamus.





 Terry Jennings

 Justice


Panel consists of Justices Mirabal, Hedges, and Jennings.


Do not publish. Tex. R. App. P. 47.

1. Demco is not a party to this proceeding.
2. McDaniel is now deceased.
3. The parties agree that "BI" stands for "bodily injury".
4. Penske concedes the McDaniel property damage claim was mistakenly
included in the parties' settlement agreement and contends it has offered to
reimburse Fulton the monies it paid Penske for this claim, but Fulton has
refused the offer.
5. See, e.g., Belmont Constructors, 896 S.W.2d at 358 n.2 (citing Beckham v.
William Bayley Co., 655 F. Supp. 288, 290 (N.D. Tex. 1987)).