Opinion issued May 9, 2002




 





 





In The

Court of Appeals

For The

First District of Texas






NO. 01-02-00146-CV

____________


IN RE MERFISH HOLDINGS, LTD., 

JACOBSON HOLDINGS, LTD.,

AND RMG PROPERTIES, INC., Relators






Original Proceeding on Petition for Writ of Mandamus






O P I N I O N

 By petition for writ of mandamus, relators, Merfish Holdings, Ltd., Jacobson
Holdings, Ltd., and RMG Properties, Inc. (collectively "the Merfish Group"),
challenge the trial court's December 17, 2001order denying their motion to stay the
proceeding and compel arbitration between them and the real parties in interest,
ViSteel I, Ltd., Tex-Tube Company, and TT Investment Company (collectively "the
ViSteel Group").

 We deny the petition for mandamus relief.

Background


 On December 14, 1994, ViSteel and GMR Enterprises, Inc. entered into a joint
venture to acquire and operate a pipe manufacturing business to be known as Tex-Tube Company. (1) ViSteel owned a 51 percent interest, and GMR owned the
remaining 49 percent. Three years later, GMR assigned its interest equally between
Merfish Holdings and Jacobson Holdings, leaving them each with a 24.5 percent
interest in Tex-Tube. 

 Also on December 14, 1994, ViSteel and RMG entered into a joint venture,
creating TT Investment Company which would acquire the real property, equipment,
and other assets of Tex-Tube. Again, ViSteel had a 51 percent interest, and RMG had
a 49 percent interest.

 Tex-Tube and TT Investment Company shared the same executive committee. 
ViSteel appointed three individuals to the executive committee, and the Merfish
Group appointed two members, Gerald Merfish and Rochelle Jacobson. Merfish was
the president and one of ViSteel's appointments was the chief executive officer. In
July of 2000, ViSteel replaced two of its appointments, and, within a month, the
executive committee eliminated the office of president, removing Merfish as an
officer, and created the position of vice president of operations. One of ViSteel's
appointments became the vice president of operations, and the relationship between
ViSteel and the Merfish Group began to deteriorate.

 In December of 2000, the executive committee informed the Merfish Group
that no distributions would be made to venturers that year to cover the income tax
owed on the venture's profits. The Merfish Group filed suit asserting a claim for
distribution. That suit was dismissed and sent to arbitration.

 Less than a month later, the Merfish Group sent the ViSteel Group a notice of
withdrawal from both joint ventures. ViSteel contended that the attempted
withdrawal was null and void because withdrawal by the Merfish Group violated
security agreements executed by the Merfish Group in connection with various loan
documents. (2) Article 4 of both joint venture agreements made null and void any
attempted disposition of a joint venture interest which violated any loan covenants.

 In November of 2001, the ViSteel Group filed suit seeking judgment that the
attempted withdrawal by the Merfish Group was null and void, and, in response, the
Merfish Group moved to compel arbitration. The arbitration clauses at issue are
found in the 1994 joint venture agreements. The clauses specify that

 All disputes arising in connection with this Agreement shall be finally
settled under the Rules of Conciliation and Arbitration of the
International Chamber of Commerce. . . . Notwithstanding the
provisions hereof, the right of [the Merfish Group] to withdrawal [sic]
as a Venturer and require [the ViSteel Group] to purchase [the Merfish
Group's] Interest as set forth in Article 9 shall not be subject to
arbitration. 


(Emphasis added.) In its December 17, 2001 order, the trial court denied the Merfish
Group's motion to compel arbitration. It is this interlocutory ruling that the Merfish
Group challenges.

 Order Denying Arbitration


 The Merfish Group argues the trial court deprived them of the benefits of the
arbitration for which they contracted.

 All parties agree that the business of the joint ventures involved interstate
commerce. The Federal Arbitration Act (FAA) applies to all suits in state and federal
court when the dispute concerns a "contract evidencing a transaction involving
commerce." Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269-70 (Tex. 1992) (orig.
proceeding). Thus, assuming the dispute falls within the scope of the parties'
arbitration agreement, the FAA applies.

Standard of Review

 Mandamus is the proper means for reviewing an order denying arbitration
under the FAA. Cantella & Co. v. Goodwin, 924 S.W.2d 943, 945 (Tex. 1996) (orig.
proceeding); Anglin, 842 S.W.2d at 272. Mandamus will issue only to correct a clear
abuse of discretion or violation of a duty imposed by law when that abuse cannot be
remedied by appeal. Anglin, 842 S.W.2d at 271. A trial court abuses its discretion
when it fails to analyze or apply the law correctly. Walker v. Packer, 827 S.W.2d
833, 840 (Tex. 1992).

 Federal and state law strongly favor arbitration. Cantella, 924 S.W.2d at 944. 
A presumption exists in favor of agreements to arbitrate under the FAA. Prudential
Sec., Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995). Courts must resolve any
doubts about an agreement to arbitrate in favor of arbitration. Cantella, 924 S.W.2d
at 944; Marshall, 909 S.W.2d at 899. Once a party seeking to compel arbitration
establishes that an agreement exists under the FAA, and that the claims raised are
within the scope of the agreement, a trial court has no discretion but to compel
arbitration and stay its proceedings pending arbitration. Cantella, 924 S.W.2d at 944.

 However, the strong federal policy of resolving doubts in favor of arbitration
cannot serve to stretch a contractual clause beyond the scope intended by the parties
or to allow modification of the plain and unambiguous provisions of an agreement.
Belmont Constructors, Inc. v. Lyondell Petrochemical Co., 896 S.W.2d 352, 356
(Tex. App.--Houston [1st Dist.] 1995, no writ). While courts may enforce arbitration
agreements, a court may not order arbitration in the absence of such an agreement. 
Freis v. Canales, 877 S.W.2d 283, 284 (Tex. 1994); Hou-Scape, Inc. v. Lloyd, 945
S.W.2d 202, 205 (Tex. App.--Houston [1st Dist.] 1997, orig. proceeding) ("A party
cannot be required to arbitrate unless it has agreed to do so.").

 Arbitration is a creature of contract, and a clause requiring arbitration will be
interpreted under contract principles. Belmont Constructors, 896 S.W.2d at 357. A
party seeking to compel arbitration must establish its right to that remedy under the
contract. Id. Contractual language will be enforced according to its plain meaning,
unless such a reading would defeat the intention of the parties. Lyons v. Montgomery,
Inc., 701 S.W.2d 641, 643 (Tex. 1985). The parties' agreement and intent to submit
to arbitration must be unambiguous. Porter & Clements, L.L.P. v. Stone, 935 S.W.2d
217, 220 (Tex. App.--Houston [1st Dist.] 1997, orig. proceeding). Construction of
an unambiguous contract is a question of law. See MCI Telecommunications Corp.
v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650-51 (Tex. 1999).

Scope of Arbitration

 The provisions of the joint venture agreements regarding arbitration contain
both broad form and specific clauses. The first part of the arbitration clauses in the
joint ventures are "broad form" clauses, (3) stating that "all disputes arising in
connection with this Agreement shall be finally settled under the Rules of
Conciliation and Arbitration of the International Chamber of Commerce." The
controversy stems from the parties' interpretation of the last sentence of the clauses. 
The clauses warn, "Notwithstanding the provisions hereof, the right of [the Merfish
Group] to withdrawal as a Venturer and require [the ViSteel Group] to purchase [the
Merfish Group's] Interest as set forth in Article 9 shall not be subject to arbitration."

 All parties refer to the Merfish Group's right to withdraw as exercising a "put." 
When notified of the Merfish Group's intent to withdraw, the ViSteel Group must buy
out the Merfish Group's interest at fair market value. As the ViSteel Group points
out, however, article 4.2 in the joint venture agreements prevent exercising the put
if doing so would cause a default in a loan agreement. Article 4.2 further states the
withdrawal is "null and void ab initio" if it would cause a default. (4)

 The Merfish Group contends the last sentence of the arbitration clauses is a
"reiteration that the basic 'right' to withdraw could not be subject to attack at all -
whether in arbitration or elsewhere." At the hearing on their motion to compel
arbitration, the Merfish Group argued that "the existence of the right to withdraw
shall be inviolate." 

 The ViSteel Group, however, contends the last sentence should be read as an
exception to the broad arbitration clause. They assert the Merfish Group "conveyed
away its unfettered right to exercise the put in Article 9 by entering into a later
security agreement" in which it agreed not to sell or dispose of its interests in the joint
ventures. The ViSteel Group argues simply that the Merfish Group does not have the
right to withdraw, and the argument surrounding their right to withdraw is not
arbitrable. In the alternative, the Merfish Group, while not conceding that the last
sentence of the arbitration clause is an exception, contends the ViSteel Group's
declaratory judgment did not dispute the Merfish Group's "right to withdrawal." 
Instead, it seeks a declaration that a particular notice of withdrawal made in February
7, 2001 is void. This is a distinction without a difference. The ViSteel Group is
contesting the Merfish Group's right to withdraw because, it alleges, the Merfish
Group cannot withdraw due to its covenant with HSBC Business Loans, Inc. 

 The trial court, applying the plain language of the contract, denied the motion
to compel arbitration because, as applied to these facts, the Merfish Group's right to
withdraw was not subject to arbitration.

 As noted by this Court in Belmont Constructors, the strong federal policy for
resolving doubts in favor of arbitration cannot serve to stretch a contractual clause
beyond the scope intended by the parties. Belmont Constructors, 896 S.W.2d at 356. 
We must enforce the language in the parties' joint venture agreements according to
their plain meaning. See Lyons, 701 S.W.2d at 643. 

 We hold the trial court did not err in denying the Merfish Group's motion to
compel arbitration. We overrule the Merfish Group's issue.

Conclusion


 We deny the Merfish Group's petition for mandamus relief. 


 Frank C. Price

 Justice

 

Panel consists of Justices Nuchia, Radack, and Price. (5)


Do not publish. Tex. R. App. P. 47.
1. The original venturers were VillaCo, which later became ViSteel, and MerfCo,
which later became the Merfish Group.
2. In 1996, Tex-Tube and TT Investment Company negotiated a credit facility
with HSBC Business Loans, Inc. The Loan and Security agreement setting
forth the terms of the credit contained a covenant expressly prohibiting the
Merfish Group from disposing of their joint venture interest.
3. See, e.g., Belmont Constructors, 896 S.W.2d at 358 n.2.
4. 4.2 Restrictions on the Disposition of an Interest. No Venturer shall
have the right to effect a Disposition of its Interest in the Joint Venture
unless and until authorized by the Executive Committee. Any attempted
Disposition by a Person of an interest or right, or any part thereof, in or
in respect of the Joint Venture in contravention of this Section 4.2 shall
be, and is hereby declared, null and void ab initio.


 Notwithstanding anything to the contrary contained in this Agreement,
no Venturer shall effect or permit a disposition of any interest in and to
the Venture or the Venturers themselves so as to cause an event of
default or a breach of any term, condition or representation contained in
any lease agreement, loan document or other agreement entered into by
the Joint Venture. 
5. The Honorable Frank C. Price, former Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.