

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-08-00701-CV

IRWIN & BOESEN, P.C.,                                   **Appellant,**

**v.**

TONY MARTINEZ AND LAW OFFICES OF
TONY MARTINEZ, P.C.,                                  **Appellees.**

## On appeal from the 197th District Court of Cameron County, Texas.

## NUMBER 13-09-00025-CV

## IN RE IRWIN & BOESEN, P.C.

## On Petition for Writ of Mandamus

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Irwin & Boesen, P.C. ("Irwin") filed a notice of appeal in cause number 13-08-00701-CV and a petition for writ of mandamus in cause number 13-09-00025-CV seeking to compel the trial court to grant Irwin's motion to compel arbitration. We dismiss the appeal and deny the petition for writ of mandamus.

## I. BACKGROUND

The underlying proceeding concerns a dispute over attorney's fees. Beginning in approximately April 2002, Irwin and other law firms entered into agreements to represent individual plaintiffs injured by Fen-Phen in a multi-district class action lawsuit (the "MDL" proceeding). Tony Martinez[1] entered into a co-counsel agreement with Irwin. Martinez's agreement with Irwin provides for the division of all amounts received as attorney's fees in connection with the assigned cases, either 'Matrix' or 'Opt-Out,' after deducting all amounts due to referring attorneys and class counsel. In the MDL proceeding, Martinez was appointed to the Seventh Amendment Liaison Committee ("SALC") and was awarded attorney's fees through his work as a member of that committee.

In May 2006, disputes arose between Martinez and Irwin, and they entered into an agreement, which included the arbitration provision at issue in the underlying lawsuit:

This is an agreement by and between Irwin & Boesen and Martinez, Barrera y Martinez:

With regard to division and distribution of Fen-Phen litigation attorneys' fees earned by the initiating and trial counsel, it is agreed that such fees will be determined and distributed according to the applicable contracts between the parties and neither Irwin & Boesen, P.C., or Martinez, Barrera y Martinez will do anything to stop or delay distribution of attorneys' fees to the appropriate

---

[1] The "Agreement Regarding Fen Phen Cases" references assignments to the "Law Office of Tony Martinez, P.C." and is signed by "Antonio Martinez, President." The underlying lawsuit was brought by Tony Martinez and Law Office of Tony Martinez, P.C., and they are the real parties in interest and appellees herein. In contrast, the agreement containing the arbitration provision is between Irwin and "Martinez, Barrera y Martinez," and is signed by Tony Martinez. Based on the record before this Court, these discrepancies are not relevant to our analysis, and we express no opinion regarding these differences.

parties. Irwin & Boesen, P.C. and Martinez, Barrera y Martinez agree to divide and distribute all attorneys' fees earned in the Fen-Phen litigation, and for which they are entitled, according to the applicable contracts between the parties and neither shall withhold or cause delay in the distribution or payment of attorneys' fees to the other.

With regard to division of expenses regarding the Fen-Phen litigation it is agreed that the two parties will negotiate in good faith to resolve their differences. If such efforts fail then it is agreed that the matter will be submitted to mediation with a mutually agreed mediator or, if unable to agree then a mediator chosen by a disinterested third party. If such effort does not produce a resolution then the parties will submit their case to binding arbitration with arbitrators to be agreed upon or, if unable to do so each party chooses one and the arbitration service utilized will pick one of its own choosing.

Subsequently, Martinez brought suit against Irwin and others seeking a declaratory judgment that the referral agreements did not create a joint venture or partnership relationship and that the attorney's fees to be divided did not include any SALC Common Benefit Fee which may have been earned by Martinez. Martinez also asked for a temporary restraining order and injunctive relief.

Irwin moved to compel arbitration of this lawsuit based on the foregoing arbitration agreement. The trial court denied the motion to compel, and these parallel proceedings ensued.

## II. FEDERAL ARBITRATION ACT OR TEXAS ARBITRATION ACT

The trial court's order did not specify whether the arbitration agreement in this case was governed by the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"). *See* 9 U.S.C. §§ 1-16 (1999) (FAA); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-.098 (Vernon 1997 & Supp. 2008) (TAA). Therefore, Irwin seeks review of the order denying arbitration both by mandamus and interlocutory appeal. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (providing that litigants alleging entitlement to

3

arbitration under the FAA and TAA must pursue parallel proceedings).

The FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach." *L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.)*, 9 S.W.3d 125, 127 (Tex. 1999) (per curiam); *see In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005); *see also* 9 U.S.C. § 2 (2005). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *See In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; rather, it requires commerce to be involved or affected. *See L & L Kempwood Assocs., L.P,* 9 S.W.3d at 127.

In the instant case, the parties to the agreement at issue are from different states. Irwin is a Colorado law firm. Tony Martinez and his law office are from Texas. The agreement at issue pertains to attorney's fees and expenses relating to the Fen-Phen litigation, which involves clients from Nebraska, Colorado, Wyoming, Oklahoma, and other states, and the MDL proceeding in Pennsylvania. Martinez does not challenge the application of the FAA to the Agreement. Given these facts, we conclude the agreement at issue evidences a transaction involving commerce and is therefore subject to the FAA.

When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding); *see* 9 U.S.C.A. § 4 (2005) (providing, in part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"); *Nabors Drilling USA, LP v.*

4

*Carpenter*, 198 S.W.3d 240, 246 (Tex. App.–San Antonio 2006, orig. proceeding). Accordingly, we dismiss Irwin's interlocutory appeal and consider the merits of its petition for writ of mandamus.

### III. Standard of Review

To be entitled to mandamus relief, a petitioner must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding). We may not substitute our judgment for that of the trial court with respect to the resolution of factual issues or matters within the trial court's discretion. *Walker*, 827 S.W.2d at 839-40. The relator must show that the trial court could reasonably have reached only one decision. *Id.* The reviewing court cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision on legal issues, our review is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id*.

### IV. Validity and Scope

A party seeking to compel arbitration by a writ of mandamus must (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196

5

S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id.* at 753-54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

## V. AGREEMENT TO ARBITRATE

"Courts may not order parties to arbitrate unless they have agreed to do so." *In re Golden Peanut Co., LLC*, 269 S.W.3d 302, 307 (Tex. App.–Eastland 2008, orig.

6

proceeding); *Belmont Constructors, Inc. v. Lyondell Petrochem. Co.*, 896 S.W.2d 352, 356-57 (Tex. App.–Houston [1st Dist.] 1995, no writ [appeal and orig. proceeding]); *see Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) ("While courts may enforce agreements to arbitrate disputes, arbitration cannot be ordered in the absence of such an agreement."). Therefore, despite strong presumptions that favor arbitration, a valid agreement to arbitrate remains a settled, threshold requirement to obtaining relief, whether under the TAA or the FAA. *See Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737-38 (FAA); *J.M. Davidson, Inc.*, 128 S.W.3d at 227 (TAA). This is so because "the purpose of the FAA was to make arbitration agreements as enforceable as other contracts, not more so." *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 354 n.4 (5th Cir. 2003)).

Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *Id.* at 737-38; *J.M. Davidson, Inc.*, 128 S.W.3d at 227-28; *Halliburton Co.*, 80 S.W.3d at 568. In construing the agreement, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *Aspen Tech., Inc. v. Shasha*, 253 S.W.3d 857, 861-62 (Tex. App.–Houston [14th Dist.] 2008, no pet.). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999).

## VI. ANALYSIS

In the instant case, Martinez contends that the underlying litigation does not fall

7

within the scope of the arbitration provision at issue. We agree, and need not look outside the contract at issue to determine that the instant dispute is not subject to arbitration. The underlying litigation concerns the division of attorney's fees. The first paragraph of the agreement at issue deals solely with the division and distribution of attorney's fees and contains no reference to negotiation, mediation, or arbitration of any such disputes. The second paragraph of the agreement, which requires arbitration, is expressly limited in scope to the "division of expenses regarding the Fen-Phen litigation." The arbitration agreement is specifically limited in scope, and does not apply to the instant dispute. The agreement to arbitrate disputes regarding the division of expenses does not stand alone to create a broad agreement to arbitrate any dispute arising under the entire contract. It must be construed in its context, and the intent of the parties should be ascertained by according the contractual language its plain grammatical meaning. *See Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985); *see In re Brookshire Bros.*, 198 S.W.3d 381, 386 (Tex. App.–Texarkana 2006, orig. proceeding).

Construing the contract by its plain language, it is clear that the parties agreed to arbitrate the division of expenses, but not attorney's fees. In this regard, we note that the policy favoring arbitration "cannot serve to stretch a contractual clause beyond the scope intended by the parties." *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 230 (Tex. App.–Houston [14th Dist.] 1993, writ denied). The scope of the contract provision here at issue is not reasonably debatable. As pointed out above, it is clearly limited by its plain language. Had the parties intended to enter a broad agreement to arbitrate all disputes, including the divisions of attorney's fees, they could easily have done so. In this regard, "the failure to use a standard broad form arbitration clause may be considered evidence

8

that the parties intended to limit the arbitrable issues and the circumstances requiring arbitration." *Belmont Constructors*, 896 S.W.2d at 358.

## VII. CONCLUSION

We dismiss Irwin's interlocutory appeal in Cause No. 13-08-00701-CV for want of jurisdiction. We conclude that the trial court did not err in refusing to order the underlying matter to arbitration in Cause No. 13-09-00025-CV. Accordingly, we deny the petition for writ of mandamus. *See* TEX. R. APP. P. 52.8(a).

ROGELIO VALDEZ
Chief Justice

Memorandum Opinion delivered and
filed on this the 2nd day of June, 2009.